UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In Re:

JULIA F. SOUSSIS

              Debtor
-------------------------------------------------------x

                   Case No. 819-73686-reg
                   (Chapter 13)
                   **NOTICE OF HEARING**

S I R S:

     PLEASE BE ADVISED that the hearing to consider the motion by the Debtor Julia F. Soussis for disgorgement of Chapter 13 Trustee Fees, the reimbursement of  attorney's fees pursuant to the Federal Tort Claim Act and other relief will be held on September 2, 2020 at 9:30 a.m. by telephone before the Honorable Robert E. Grossman, one of the judges at the United States Bankruptcy Court for the Eastern District of New York, Long Island Federal Courthouse, Central Islip, New York 11722.

     PLEASE BE FURTHER ADVISED, that any and all opposition papers to the relief sought must be: (a) filed by ECF with the Clerk of the Court and (b) received by the undersigned counsel at the address set forth below, at least three (3) business days prior to the scheduled hearing date set forth above.

     PLEASE BE FURTHER ADVISED that if you file an objection to the motion for the relief set forth above, you must appear at the telephone hearing on September 2, 2020 at 9:30 a.m. to support your objection or the Court may grant the relief requested in the motion notwithstanding your written objection.

     PLEASE BE FURTHER ADVISED that to appear at the hearing telephonically, you must "sign up" with Court Solutions at https://www.court-solutions.com" for an account and to

register a telephonic appointment.

Dated: Hauppauge, New York
       August 11, 2020

                                    JEFFREY HERZBERG, PC
                                    Successor Attorney for Julia F. Soussis

                                    By: /s/ Jeffrey Herzberg _____
                                        Jeffrey Herzberg
                                    300 Rabro Drive, Suite 114
                                    Hauppauge, New York 11788
                                    (631) 761-6558
                                    jeff@jherzberglaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In Re:

                                      Case No. 819-73686-reg

JULIA F. SOUSSIS,                    (Chapter 13)

        Debtor
--------------------------------------------------------x

## MOTION FOR DISGORGEMENT OF ALL OF THE FEES PAID TO THE CHAPTER 13 TRUSTEE BY THE DEBTOR, THE REIMBURSEMENT OF ATTORNEY'S FEES PURSUANT TO THE FEDERAL TORT CLAIMS ACT AND OTHER REFLIEF

To the Honorable Robert E. Grossman,
United States Bankruptcy Judge:

       Julia F. Soussis (the "Debtor" or "Soussis"), by and through her attorney, Jeffrey Herzberg, PC, files this motion for disgorgement of fees paid to the Chapter 13 trustee by the Debtor, the reimbursement of attorney's fees pursuant to the Federal Tort Claims Act, and for other relief, states as follows:

       1.       The Debtor filed a voluntary petition for relief under and pursuant to Chapter 13 of Title 11, United States Code (the "Bankruptcy Code") on May 20, 2019 (the "Filing Date").

### Introduction

       2.       The Debtor's mortgage company had commenced a mortgage foreclosure action against the Debtor's real property known as 90 Amherst Street, Garden City, New York 11530 (the "Property") in the Supreme Court of the State of New York, County of Nassau (the "Supreme Court") in or about 2007, Index No. 007961/2007 (the "Supreme Court Action"); the summons and complaint was allegedly served on a person of suitable age and discretion, but not upon the Debtor, personally.  The Debtor's prior attorney had served a notice of appearance, but never filed an answer or other dispositive motion to the Supreme Court Action.  The Supreme Court granted the bank a default judgment and ultimately a judgment of foreclosure and sale.

3.      The Debtor, thereafter, retained the undersigned counsel to appeal the issuance of the summary judgment seeking to litigate the standing issue.  However, in <u>JPMorgan Chase Bank, N.A. v. Soussis,</u> 165 A.D.3d 1240, 84 N.Y.S.3d 805 (2nd Dept., 2018), the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Department") affirmed the order of the Supreme Court and accordingly, dismissed the failure of the bank to demonstrate its standing.  The Second Department stated at 165 A.D.3d at 1241:

> "The defendant waived any claim that the supreme Court lacked personal jurisdiction over her.  The defendant appeared in the action by serving a notice of appearance, and neither she nor her attorney moved to dismiss the complaint on the ground of lack of personal jurisdiction at that time or asserted lack of personal jurisdiction in a responsive pleading."

(Citations Omitted). It should be further noted that the Debtor had filed a prior Chapter 13 bankruptcy case before her retention of the undersigned attorney, and the bank filed a proof of claim in which it admitted that it failed to possess the original mortgage note as required by the laws of the State of New York in order to demonstrate its standing to sue.  Please see <u>Aurora Loan Servs., LLC v. Taylor,</u> 25 N.Y.3d 355 (2015).  Rather, the bank was now relying on a lost note affidavit in accordance with the terms and provisions set forth in U.C.C. §3-804; however, the undersigned counsel believed and continues to believe that the lost note affidavit was deficient.

4.      Accordingly, the undersigned counsel referred this matter to Ivan E. Guerrero, Esq. to file a voluntary Chapter 13 bankruptcy case to stop the foreclosure sale, to contest the proof of claim that the bank may file, if any, and to pay the mortgage arrearage, if any, under a Chapter 13 plan.  And it certainly appeared that the Debtor had the ability to formulate a confirmable Chapter 13 plan as she was and continues to be a school principal in an elementary school under the auspices of the City of New York Board of Education.

5.      However, the New York State Legislature passed a new statute, which was signed by Governor Cuomo, namely RPAPL §1302-a, which became effective on December 23, 2019. RPAPL §1302-a entitled: "Defense of lack of standing; not waived" provides:

> "Notwithstanding the provisions of subdivision (e) of rule thirty-two hundred eleven of the civil practice law and rules, any objection or defense based on the plaintiff's lack of standing in a foreclosure proceeding related to a home loan, as defined in paragraph (a) of subdivision six of section thirteen hundred four of this article, shall not be waived if a defendant fails to raise the objection or defense in a responsive pleading or pre-answer motion to dismiss.  A defendant may not raise an objection or defense of lack of standing following a foreclosure sale, however, unless the judgment of foreclosure and sale was issued upon defendant's default."

Accordingly, since on or about December 23, 2019, the undersigned counsel has been encouraging Mr. Guerrero and/or the Debtor to dismiss the Chapter 13 proceeding as the provisions set forth in RPAPL §1302-a accomplished the same objective that the Second Department appeal was seeking to accomplish, namely the opportunity to challenge the bank's standing to sue given its inability to produce the original mortgage note and its deficient lost note affidavit in accordance with the provisions set forth in U.C.C. §3-804.

6.      The Chapter 13 case was dismissed upon motion by the Debtor by the order of the Court dated June 30, 2020, without the confirmation of a Chapter 13 plan.  Copies of the Order Dismissing the Case and the docket sheet are annexed hereto as Exhibit "A" and are incorporated herein by reference.

7.       Michael J. Macco, Esq. (the "Trustee"), the Chapter 13 trustee of the Estate of Julia F. Soussis, thereafter, filed his accounting of his receipts and disbursements.  It reflects that the Trustee received Three Hundred Sixty Two Thousand One Hundred and xx/100 Dollars ($362,100.00), but only returned Three Hundred Forty One Thousand Five Hundred Eight and xx/100 Dollars ($341,508.00), for a difference of Twenty Thousand Five Hundred Ninety Two and xx/100 Dollars ($20,592.00).  According to the final accounting of the Trustee's receipts and

disbursements, the Trustee disbursed or retained the $20,592.00.  A copy of the final accounting

of the Trustee's receipts and disbursements is annexed hereto as Exhibit "B" and is incorporated

herein by reference.

8.      A Trustee's fee for a dismissed Chapter 13 case, which plan was never confirmed,

of $20,592.00 is excessive and abhorrent, which equates to approximately 5.69% of the Chapter

13 plan payments made by the Debtor.  In fact, according to the Disclosure of Compensation of

Attorney for Debtor(s) dated June 4, 2019, Ivan Guerrero, Esq. only received Four Thousand and

xx/100 Dollars ($4,000.00); accordingly, the Trustee received greater than five times (5x) the fee

of the Debtor's attorney.  This excessive fee is further repugnant as the Trustee never filed a

motion seeking fees and/or gave Soussis or her counsel, the opportunity to oppose said fees.

Rather, the Trustee unilaterally periodically took said fees without any order(s) of this Honorable

Court and upon information and belief, without prior disclosure to the Debtor or his prior

attorney, Ivan E. Guerrero, Esq. And to compound the problem, to this date, the Trustee has not

disclosed any information as to his actual administrative expenses that were specifically incurred

in the administration of the Debtor's Chapter 13 case.  Accordingly, there was no accountability

for the unilateral taking of the $20,592.00 by the Trustee.

9.      Upon information and belief, Soussis would not have opposed a reasonable

Chapter 13 trustee fee, but a Chapter 13 trustee of $20,592.00 is excessive and should not be

countenanced by this Honorable Court, as a court of equity.

10.      Section 326 of the Bankruptcy Code entitled" Limitation on compensation of

trustee" provides in pertinent part:

"In a case under … or chapter 12 or 13 [… 1201 et seq. or 1301 et seq.} of this title, the
court may not allow compensation for services or reimbursement of expenses of the
United States trustee or of a standing trustee appointed under section 586(b) of title 28,
but may allow reasonable compensation under section 330 [11 USCS §330] of a trustee

appointed under section … or 1302(a) of this title […. 11 USCS §1302(a)] for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan."

11.    As the Soussis' Chapter 13 plan was never confirmed, the Trustee should not have been permitted to retain any fees, whether up to the 5% or 10% of all pre-confirmation plan payments.

12.    Section 1326 of the Bankruptcy Code entitled: "Payments" provides in pertinent part:

"(a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount ---
…
(2)(A) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation.  If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable.  **If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).**
(3) Subject to section 363, the court may, upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a hearing."

(Emphasis Added).  Section 503(b) of the Bankruptcy Code provides for the allowance of administrative claims including the actual, necessary costs and expenses of preserving the estate.

13.    28 U.S.C. §586(e)(2) provides in pertinent part:

"(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under …. or chapter 12 or 13 of title 11 {11 USCS §§1181, et seq. or… 1301 et seq.], shall fix ---
…
(B) a percentage fee not to exceed –
        (i) in the case of a debtor who is not a family farmer, ten percent..
Based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee
(2) Such individual (referring to the Chapter 13 trustee) shall collect such percentage fee from all payments received by such individual under plans in the cases under … or 1301 et seq.] for which such individual serves as standing trustee…"

Accordingly, if any fees are due and owing to the Chapter 13 trustee, there is a conflict of the 5%

fee set forth in Section 326 of the Bankruptcy Code and the 10% fee set forth in 28 U.S.C.

§586(e)(2)(B).  And as will be discussed hereafter, there may also be a conflict between the

provisions set forth in Section 1326(2)(A) of the Bankruptcy Code and 28 U.S.C. §586(e)(2).

14.    There are conflicting authorities as to whether the Trustee can collect any fees

upon the dismissal of a Chapter 13 case, without a confirmation of a Chapter 13 plan.  In re

Acevedo, 497 B.R. 112 (Bkrtcy. D.N.M. 2013) first acknowledged the potential conflict between

the provisions set forth in 28 U.S.C. §586(e) which authorizes the Attorney General in

consultation with the Office of the United States Trustee to fix a percentage fee for standing

trustees in Chapters 12  and 13 cases and Section 1326(a)(2) of the Bankruptcy Code which

provides that the monthly pre-confirmation payments must be retained by the Chapter 13 trustee

and that if a plan is not confirmed, the trustee shall return any such payments not previously paid

after deducting any unpaid claim allowed under Section 503(b) of the Bankruptcy Code.  As

stated in In re Acevedo at 497 B.R. at 116:

> "The issue before the Court is whether the trustee may be paid her percentage fee in cases
> where no plan is confirmed, or instead must return to the debtor all plan payments
> received after deducting any unpaid claim allowed under §503(b)."

After providing a brief summary of the parties' arguments, In re Acevedo at 497 B.R. at 117

discussed the construction and interpretation of statutes.  It stated at 497 B.R. at 117-118:

> "When interpreting federal statutes, the Court's primary goal is to deduce the intent of
> Congress from the statute's language, and apply the statute accordingly.  ('It is our
> primary task in interpreting statutes to determine congressional intent, using traditional
> tools of statutory construction.'').  When interpreting a statute, words should generally be
> given their ordinary or natural meaning' at the time Congress enacted the statute').  If the
> language of a statute is clear, ordinarily the Court's inquiry ends.  ('If the statute is clear,
> our inquiry ends.').  'It is a well-established law of statutory construction that, absent
> ambiguity or irrational result, the literal reading of a statute controls.''.  Further, courts
> must read statutes as a whole, rather than in isolation.  ('We do not .. construe statutory
> phrases in isolation; we read statutes as a whole.').  Accordingly, the meaning ascribed to

a particular phrase must be consistent with the larger statutory context. ('[S]tatutory terms are often 'clarified by the remainder of the statutory scheme --- because the same terminology is used elsewhere in a context that makes [its] meaning clear …'''). In general, only if the language of a statute is ambiguous should the court consider legislative history and public policy underlying the statute to discern its meaning. ('Where the statute is ambiguous, we look to the legislative history and the underlying public policy of the statute.)(the court looks to the legislative history and the underlying public policy only if a statute's plain language is ambiguous as to Congressional intent). Finally, whenever possible, the Court should construe apparently conflicting statutes harmoniously where possible.') (court has an obligation to construe two statutory provisions in such a way as to avoid conflicts between them, if such a construction is possible and reasonable). With these principles in mind, the Court will consider the language of the two statutes in question."

(Citations Omitted). Thereafter, <u>Acevedo</u> considered both Section 1326(a)(2) of the Bankruptcy Code and 28 U.S.C. §586(e). The <u>Acevedo</u> Court stated that the Office of the United States Trustee had argued that the Chapter 13 trustee was entitled to up to 10% of the amounts paid by the debtor in accordance with the provisions set forth in 28 U.S.C. §586(e)(2). <u>In re Acevedo</u> stated at 497 B.R. 119-125:

"The Tenth Circuit's decision in *In re BDT Farms, Inc.,* 21 F.3d 1019 (10th Cir. 1994), supports this conclusion. In *BDT Farms,* the Tenth Circuit held (construing 28 U.S.C. §586(e)(2)) that the Chapter 12 trustee collects the percentage fee from the entire monthly payment specified under a Chapter 12 plan. The 'payments' addressed in *BDT Farms* are the ones referred to in §1226(a), the parallel section to §1326(a) in Chapter 13 cases. In reaching its conclusion, the Tenth Circuit construed 'all payments received by such individual [the trustee] under plan,' contained in §586(e)(2), to mean the entire monthly payment, without deduction a portion for the trustee's percentage fee.

The Court rejects the UST's assertion that a debtor cannot 'propose' to pay trustee's fees. First, while the Court agrees that the fee percentage is fixed as set forth in §586(e), the actual dollar amount of the fee is not fixed. Instead, the dollar amount of the fee depends on the size of the debtor's monthly lump sum plan payment. Often, the debtor files a plan proposing a smaller monthly plan payment (which would result in a smaller trustee's fee), while the trustee objects and argues that the monthly payment should be larger. The fee the trustee actually collects can vary significantly, depending on the outcome of the dispute over the size of the monthly plan payment. Thus, although the fee percentage is mandated, the debtor nevertheless 'proposes' the amount of the monthly fee when she files her plan.

Second, other payments a debtor proposes to pay the trustee under §1326(a)(1)(A) are as 'mandatory' as the trustee's fee. For example, in jurisdictions requiring residential

mortgage payments to be made through the trustee, a debtor must pay, without modification, all amounts due after commencement of the Chapter 13 case under a residential mortgage loan in accordance with the pre-bankruptcy agreement of the parties. Similarly, pursuant to §1322(f) a plan may not materially alter the terms of certain loans from ERISA-qualified plans; where such a loan is outstanding and if the court requires that the payment be made through the trustee, the debtor has no choice but to repay through the trustee the loan as agreed.   In either case, there is no dispute or potential dispute to be resolved by a proposal, but the amounts are included in the monthly payment 'proposed' by a plan under §1326(a)(1)(A).

Section 1326(b) supports the Court's interpretation of §1326(a)(1)(A).  Section 1326(b) requires the standing Chapter 13 trustee to pay the trustee's percentage fee 'before or at the time of each payment to creditors under the plan.'  But the trustee may pay creditors only under a confirmed plan.  *See* 11 U.S.C. 1326(a)(2) (requiring the trustee to retain the payments until confirmation or denial of confirmation, and then distribute the payments in accordance with the plan '[i]f a plan is confirmed').  Because the trustee never pay creditors if no plan is confirmed, and §1326(b) provides for payment of trustee fees *before* or the time the trustee pays creditors, it follows that, if confirmation never happens, §1326(b) does not contemplate payment of the trustee's percentage fee.  *See Rivera*, 268 B.R. at 294 (observing that §1326(b) 'seems to assume a prior confirmation.').

The Court's interpretation of §1326(a)(1)(A) is also consistent with the overall purpose of §1326.  When the Bankruptcy Code was enacted in 1978, §1326 consisted only of what are now subparagraphs (b) and (c).  There was no mention of payments proposed by a plan, payments by the debtor to the trustee, or disbursement of payments under a plan if a plan is not confirmed; the section only addressed payment of the trustee's fee and 'payments to creditors' to be made by the trustee.  Section 1326(a) was added in 1984, to require debtors to start making plan payments to the trustee shortly after the case was filed and prior to plan confirmation.  It seems very unlikely Congress intended to require that debtor make only partial payments, i.e., the payments for the benefit of creditors but not the trustee's fees.  The Court therefore concludes that the §1326(a)(1)(A) payments include the trustee's fees.

Finally, the Court's interpretation of §1326(a)(1)(A) is consistent with the structure of §1326.  The UST's proposed reading of §1326(a)(1)(A) would mean that the debtor's required payments to the trustee are less than the payments the trustee must make under §1326(a)(1)(A).  The better reading is that payments proposed by a plan to the trustee under §1326(a)(1)(A) include the trustee's fees, so that the proposed amount matches what the trustee is required to pay under §1326(b) and (c).

E. <u>Section 586(e)(2) Cannot be Read in Isolation and Can be Harmonized with §1326.</u>
The first sentence of 28 U.S.C. §586(e)(2) can be construed in at least three ways:

*--Mandatory Construction*

The subsection obligates the trustee to collect trustee fees from all payments she receives under a plan, which includes payment of the collected fee to herself or the UST's System Fund even in cases where no plan is confirmed;

*--Collect and Hold Construction:*
The subsection requires the Trustee to collect and hold the fees until confirmation, then to disburse them as directed by 11 U.S.C. §1326(a)(2) and 28 U.S.C. §586(e)(2).

*--Responsibility and Source Construction:*
The subsection identifies the Trustee as the party responsible for collecting the percentage fees, and identifies the plan payments received by the Trustee as the sole source for collection, but does not address when the fees should be collected or paid to the Trustee or UST System Fund.

Each of these three constructions is plausible.  Without reference to Chapter 12 and Chapter 13, the Trustee's and UST's proposed mandatory' construction makes some sense.  Given the Court's interpretation of §1326(a)(1)(A), however, the 'mandatory payment' interpretation of §586(e)(2) creates a conflict with §1326 because it requires the Trustee to collect and retain the percentage fee (or to pay any surplus to the UST's System Fund) in the face of §1326(a)(2)'s directive to return payments to the debtor if a plan is not confirmed.

To avoid this conflict, the Court concludes that the best, most harmonious reading of the two statutes is that §586(e)(2) directs the trustee to collect and hold the percentage fees pending plan confirmation, while §1326(a)(2) tells the trustee when and how to disburse payments after confirmation or denial of confirmation, including the trustee's percentage fee.  The UST points out that §586(e)(2) requires the trustee to collect the percentage fee on all payments received under plans, not limiting such collection to confirmed plans. The UST points out further that in the Code, the term 'plan' is used to refer to both confirmed and unconfirmed plans unless the term 'confirmation' or 'confirmed' appears in close proximity or the context clearly dictates otherwise.  The Court finds this argument persuasive as it relates to §586(e)(2) and agrees that the trustee is to collect the percentage fee from all payments received under both confirmed and unconfirmed plans. This construction is consistent with the Court's determination that payments proposed by a plan under §1326(a)(1)(A) include all payments the debtor makes to the trustee, including the trustee's percentage fee.  The Court disagrees that the term 'collect,' as used in §586(e)(2), includes not only setting aside funds from payments received under plans for trustee's fees but also paying those funds to the trustee or to the UST System Fund.  Such a construction would conflict with §§1326(a)(1)(A) and 1326(b)(2).  As discussed above, §1326(b)(2) requires the trustee in unconfirmed cases to return to the debtor all funds received, including the trustee's fee, after payment of administrative expenses.  Consequently, even though §586(e) does not specifically address when the collected trustee's fees are to be paid out, the Court rejects the UST's construction of §586 payment of such fees from payments in cases with unconfirmed plans.

The requirement in the second sentence of §586(e), directing the Trustee to pay certain excess funds to the UST System Fund, does not conflict with the Court's interpretation of §586 and §1326. Both clauses in the second sentence of §586(e)(2) can be reasonably interpreted only to require payments in cases in which plans are confirmed. Nothing in the second sentence of §586(e)(2) requires the trustee to generate such a surplus by paying her salary and operating expenses from funds collected in cases where no plan is confirmed.

F. Comparing §1226 and §1326. The Court's harmonization of §586 and §1326 is further supported by the differences between §1326(a)(2) and its Chapter 12 counterpart, §1226(a)(2). Section 1226(a) provides:

> (a) Payments and funds received by the trustee shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payments to the debtor, after deducting –
>
> > (1) any unpaid claim allowed under section 503(b) of this title; and
> > (2) **if a standing trustee is serving in the case, the percentage fee fixed for such standing trustee.**

11 U.S.C. §1226(a)(emphasis added). Thus, for Chapter 12 cases, Congress specifically addressed the issue by allowing the standing Chapter 12 trustee to deduct her percentage fee in unconfirmed cases from funds returned to the debtor. Congress did not, however, add similar language to §1326(a)(2). Section 1226(a) was adopted in 1986, two years after Congress added what is now §1326(a). When Congress enacted §1226(a), it also amended §1326, leading the Court to conclude that Congress could have easily inserted a similar provision into §1326(a). The fact that it did not supports an inference that Congress intended different treatment of trustee fees in Chapter 12 and 13 cases. When 'Congress includes particular language in one section of a statute but omits it in another section of the same Act,'' the difference is presumed to be intentional. (citing the foregoing cases and stating that 'Congress knew how to clearly express such allowance of percentage fees, and its failure to do so in §1326(a) indicates Congress did not intend to allow such fees in Chapter 13 cases where plans are not confirmed.'). It would be improper for the Court to read §1226(a)(2) into Chapter 13, or to ignore the crucial difference between the sections.

G. Rivera and Miranda. Finally, although neither *Rivera* nor *Miranda* is binding on this Court, the Court remains persuaded by the reasoning in those cases. Both *Rivera* and *Miranda* found that while §586(e) authorizes the standing Chapter 13 trustee to collect the percentage fee and determine how the fee shall be calculated, it must be read in conjunction with §1326, the applicable Bankruptcy Code section which calls for the standing Chapter 13 trustee to return payments to the debtor (less administrative expenses) if a plan is not confirmed. *Miranda* also found persuasive the specific language contained in §1226 which Congress did not include in the parallel statute applicable to substantial change in the relevant

statutes, but rather on new arguments about the construction of those statutes. That is too slender a reed.  The Court has considered the UST's and the Trustee's arguments and found them unpersuasive.


III. <u>CONCLUSION</u>

The two statutes at issue can best be harmonized if §586(e)(2) is construed to a) identify a source from which trustee's percentage fees are to be paid; and b) instruct the Trustee to collect and hold the fees pending plan confirmation; §1326(a), in turn, dictates the conditions and timing of payment.  This construction, the Court believes, is what Congress intended, and is a more natural reading of the subsections.  The Court acknowledges that its method of harmonizing the statutes is not totally satisfying – it is based on a somewhat unnatural reading of the first sentence of §586(e)(2).  The only alternative, however, is a substantially less natural reading of §1326(a).  On the whole, the Court believes that its construction better reflects legislative intent.  11 U.S.C. §1326(a)(2) and 28 U.S.C. §586(e)(2), read together, require the Trustee to return all plan payments to the Debtors (after deducting administrative expenses) without first deducting her percentage fees."

(Emphasis Added)(Citations Omitted)(Footnotes Omitted).  <u>In re Dickens,</u> 513 B.R. 906 (Bkrtcy.

E.D. Ark. 2014) stated at 513 B.R. at 907-908:

"The issue before the Court is whether the Trustee is permitted to retain a collected percentage fee provided for by 28 U.S.C. §586 when the Debtors' case was dismissed prior to confirmation of a plan.  This issue has been percolating through the courts recently.  Joined by the U.S. Trustee, the Trustee asserts that §586 unambiguously provides for the retention of the fee in such cases.  The Debtors argue that §586 is ambiguous and must be read in conjunction with 11 U.S.C. §1326(a) of the Bankruptcy Code.  By reading these statutory provisions together, the Debtors maintain that they are entitled to a refund of certain percentage fees collected by the Trustee in their case.  For the reasons stated below, the Court finds that the Trustee must remit the percentage fee to the Debtors."

<u>In re Dickens</u> while following most of the analysis set forth in <u>In re Acevedo</u> further stated at 513

B.R. at 911, that the Office of the United States Trustee had a three prong argument; they are as

follows:

1.  the provisions set forth in  based on the provisions set forth in Section 586(e) are

    unambiguous and are based on the term "plans" as used in Section 586(e)(2) which

include both confirmed and unconfirmed plans – the court in <u>Dickens</u> agreed with this interpretation;

2.  the <u>Dickens</u> court also agreed that the ordinary meaning of the phrase "collect" is to obtain payment", and, accordingly, stated: "the Court agrees that, in the context of §586(e)(2), to collect a percentage fee means to 'obtain payment' of it"; and

3.  in discussing the third and final prong of the United States Trustee's argument that when the standing trustee obtains payment of the percentage fee, the fee cannot be returned. <u>Dickens</u> stated:

> "In other words, to 'collect' a percentage fee under §586(e)(2) is to obtain an irrevocable payment.  The Court does not agree.  Nothing in the definition of 'collect' advanced by the U.S. Trustee mandates a view that collection of a percentage fee is irrevocable and forever vests in the standing trustee.  *See In re Acevedo,* 497 B.R. 112, 122 (Bankr. D.N.M. 2013) positing 'at least three ways' to construe the first sentence in §586(e)(2)).  The trustee's interpretation is also at odds with the Trustee's duty to pay into the United States Trustee Program fund any collected fees during the fiscal year that put her over the cap of §586(e)(2)(A).  Furthermore, the trustees' interpretation of §586(e)(2), a provision applicable to Chapter 12 cases, makes 11 U.S.C. §1226(a)(2) superfluous."

<u>In re Dickens</u> stated at 513 B.R. at 913-914:

> "*Accevedo's* interpretation of 'amount proposed by the plan to the trustee' under §1326(a)(1)(A) makes sense.  It recognizes that '[a] debtor's plan ordinarily proposes monthly lump sum payments to the trustee for the term of the plan,' *id.* at 119, which is the practice in the Eastern District of Arkansas.  At the January 30, 2014 hearing, Tracey Greenwood, case operations administrator for the Trustee's office, confirmed that the percentage fee is part and parcel of the monthly lump sum payments made to the Trustee. She testified that the fee is included in the monthly lump sum payment written down in the blank space provided for in the model plan used by debtors, including the ones in this case.  If the monthly payments do not cover the percentage fee, Greenwood explained that the Trustee will object to the plan.  Greenwood's testimony coupled with the reasoning of *Acevedo* leads to the conclusion that the percentage fee is included and described by the statute as an 'amount proposed by the plan to the trustee' under §1326(a)(1), that must be returned to the debtor when a plan is not confirmed in accordance with subsection (a)(2).

In summary, the Court finds that §586(e)(2) specifies the source from which the trustee is to collect the percentage fee while §1326(a) addresses the circumstances under which the

trustee must return the collected fee to the debtor.  If a case is dismissed prior to the confirmation of a plan, §1326(a)(2) requires the trustee to return the collected percentage fee to the debtor."

In re Lundy, 2017 Bankr. LEXIS 3317 (Bkrtcy. N.D. Ohio 2017) while recognizing that there is

a dispute in the interpretation of the term "to collect" between Acevedo and Dickens, and agreed

with the Acevedo interpretation, nevertheless agreed with both Acevedo and Dickens, that if a

Chapter 13 plan is not confirmed, the Chapter 13 trustee must return all of the pre-confirmation

moneys paid to he or she other than the administrative expenses set forth in Section 503 of the

Bankruptcy Code.  In re Lundy stated at 2017 Bankr. LEXIS 3317 at *23-*28

> "For all of the reasons discussed above, the court also agrees with the ultimate conclusion in both *Acevedo* and *In re Dickens* that §1326(a)(2) requires that payments received by the standing trustee under a proposed Chapter 13 plan, which include the statutory percentage fee, must be returned to the debtor, less allowed administrative expenses, if a plan is not confirmed.  This conclusion is supported by the language in the parallel statute in Chapter 12, §1226,  That section provides:
>
> (statute is not repeated and restated herein).
>
> 11 U.S.C. §1226(a).  So Congress knows how to provide for allowance of a standing trustee's percentage fee in cases where a plan is not confirmed.  Section §1226(a) was enacted in 1986, two years after Congress added what is now §1326(a).  At that time, §1326 was also amended, yet Congress did not include a similar provision in §1326(a).  'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.
>
> The conclusion that the payments received by the standing trustee under a proposed Chapter 13 plan, including amounts for the Trustee's percentage fee, must be returned to the debtor if a plan is not confirmed is also supported by the legislative history, which states that '[i]f a private standing trustee serves, his fee is fixed by the Attorney General under proposed 28 U.S.C. 586(e), and it will be payable under proposed 11 U.S.C. 1326(a)(2),' which as since been redesignated as §1326(b)(2).  As the court concluded earlier, §1326(b) addresses priority claim payments made under a confirmed plan.
>
> The court finds *Nardello,* relied upon by the Trustee, to be factually distinguishable and its interpretation of §1326(a)(2) and §586(e)(2) unpersuasive.  *Nardello* involved a Chapter 13 case in which the debtor proposed a plan that included two sources of payments – monthly payments and monies received from the sale of his yacht.  *Nardello*, 514 B.R. at 115.  The debtor's plan was never confirmed, and the case was voluntarily

dismissed.  Before the case was dismissed, the court had authorized the sale of real estate co-owned by the debtor and two non-debtors and ordered the trustee to hold the proceeds of the sale pending further order of the court.  The trustee paid the co-owners their share, and, on dismissal, disbursed the proceeds remaining to the debtor, less a 6.6 percentage fee on all payments received by the trustee, including the portion of the proceeds of the sale that belonged to the co-owners.  The debtor objected to the trustee retaining any fee, arguing that §1326(a) and (b) do not provide for payment of a percentage fee where the case is dismissed before confirmation.

The district court rejected the debtor's argument.  It stated that '[i]t is clear that the percentage fee is distinct from payment to creditors and that Section 1326(a)(2) is silent as to whether the trustee's percentage fee shall be returned when a plan is unconfirmed.'  Based on that reasoning, the court concluded that §1326(a)(2) did not require the standing trustee's percentage fee mandatory on all payments received by the trustee, including in cases dismissed before confirmation.  Later in the opinion, the court agreed with the bankruptcy court that the payments upon which the trustee calculated her percentage fee (the real estate proceeds) were not payments proposed under the debtor's plan and thus were not controlled by §1326(a).  It further found that it was irrelevant that no payments were made to creditors 'because Section 586(e)(2) is directed to 'all payments received' by the trustee, not payments to creditors.'

To the extent the *Nardello* court's conclusion was based on the fact that the real estate sale proceeds were not a source of the payments proposed by the debtors plan and thus that §1326(a)(2) did not apply, the case is factually distinguishable.  All of the payments to the Trustee in this case were payments under Debtors' proposed plan(s).  To the extent the court's conclusion was based on its determination that §1326(a)(2) is silent as to whether the percentage fee must be returned when a plan is not confirmed, its analysis is unpersuasive.  As discussed earlier, §1326(a)(2) addresses what the trustee must do with the payments 'made under paragraph (1)(A),' which are described as payments 'in the amount – proposed by the plan.'  Even the *Nardello* court found that the amounts received by the trustee under the plan 'cover both payments to creditors and the trustee's percentage fee.'  The payment amounts that must be returned to debtors when their plan is not confirmed must include the trustee's percentage fee.

In summary, the court concludes that §586(e)(2) requires a standing Chapter 13 trustee to collect the applicable percentage fee from all payments that the trustee receives under both confirmed and unconfirmed plans and to hold the fee collected pending plan confirmation.  Disbursement of the payments being held, which include the percentage fee, is governed by §1326(a)(2) and (b).  Where a plan is not confirmed, §1326(a)(2) requires the trustee to return all such payments, including the statutory percentage fee being held by the trustee, after deducting any allowed administrative expense claims."

(Citations Omitted).  And In re Evans, 2020 Bankr. LEXIS 382, 68 Bankr. Ct. Dec. 106, 2020

WL 739258 (Bkrtcy. Idaho. 2020) stated at 2020 Bankr. LEXIS 382 at *27:

"This Court believes the correct interpretation falls in line with the reasoning of *Acevedo, Dickens, and Lundy*. Section 586(e)(2) directs the trustee to collect and hold the payments pending plan confirmation and the source from which to collect the percentage fee, while §1326(a)(2) tells the trustee when and how to disburse payments before or after confirmation. Accordingly, the trustee must hold the payments in her possession until confirmation or denial of confirmation. If a chapter 13 case is dismissed pre-confirmation, as in this case, the trustee shall return any such payments not previously paid and not yet due and owing to creditors to the debtor, including the trustee's percentage fees."

Please see also In re Crespin, 2019 Bankr. LEXIS 1575 (Bkrtcy D.N.M. 2019).

15.    Therefore, the Chapter 13 Trustee must refund all of the pre-confirmation plan payments made by the Debtor to the Debtor less allowed administrative expenses as set forth in Section 503 of the Bankruptcy Code, upon the dismissal of an unconfirmed Chapter 13 case. The Chapter 13 Trustee may not retain any and all of the percentage fees set forth in 28 U.S.C. §586(e)(2).

16.    In fact, the List of Changes and Updates to the Handbook for Chapter 13 Standing Trustees dated May 2015 published by the U.S. Department of Justice stated:

"Second paragraph is revised to read as follows:
'The percentage fee is collected from all payments received by the standing trustee under the plan, including ongoing mortgage payments. 28 U.S.C. §586(e)(2). Any exceptions to the collection of a fee on specific payments such as ongoing mortgage payments and domestic support obligations will be stated in the Director's notice fixing the percentage fee. The percentage fee collected is the percentage fee in effect at the time the payment is received. The standing trustee is authorized to collect the percentage fee upon receipt of the payment. The trustee must transfer the percentage fee to the operating expense account at least monthly. **If the plan is dismissed or converted prior to confirmation, the standing trustee must reverse payment of the percentage fee that had been collected upon receipt if there is controlling law in the district requiring such reversal or if (after consultation with the United States Trustee) the standing trustee determine that there are other grounds for concern in the district. If the standing trustee determines that all or part of the payment may not be a payment under the plan, the standing trustee may delay collection of the percentage fee on that payment or part of a payment until there is a determination of that issue**. [Policy change effective October 1, 2014].'"

(Emphasis Added).  Accordingly, even if the Chapter 13 standing trustee handbook requires/acknowledges the reversal of the percentage fee upon dismissal or conversion if the subject district requires the reversal of the percentage fee in certain judicial districts. Accordingly, why should the reversal depend upon the applicable district given that the Bankruptcy Code and 28 U.S.C. §586(e) are universal laws in the United States?  It should be further noted that the handbook does not have the force of law, but is merely a guideline for use by Standing Chapter 13 Trustees.  A copy of the List of Changes and Updates to the Handbook for Chapter 13 Standing Trustees dated May 2015 is annexed hereto as Exhibit "C" and is incorporated herein by reference.

17.    In the current Chapter 13 case, the Chapter 13 Trustee was taking moneys out of the Debtor's Chapter 13 account on an interim basis as reflected on the Chapter 13 Trustee's final accounting, which may be permissible under the Standing Chapter 13 Trustee Guidelines. However, said periodic or interim taking of the moneys out of the Debtor's account was violative of the provisions set forth in Section 1326(2)(A) of the Bankruptcy Code and as set forth above, statutes must be given its ordinary meaning .  The first sentence of said statute states: "A payment made under paragraph (1)(A) **shall be retained by the trustee until confirmation or denial of confirmation**."  (Emphasis Added).  By taking the periodic or interim payments, the Chapter 13 Trustee violated the provisions of Section 1326(2)(A) of the Bankruptcy Code. Please see also In re Evans, 2020 Bankr. LEXIS 382 at *27 and the other cases cited above.

18.    A percentage fee of $20,592 to the Chapter 13 Trustee is exorbitant, especially in comparison to the Debtor's Chapter 13 attorney, Ivan E. Guerrero, Esq. having only received a $4,000 fee.  Please note that the provisions set forth in 28 U.S.C. §586(e)(2)(B)(i) provides a percentage fee not to exceed 10%; it does not mandate that a 10% fee must be paid, but only

provides that is the maximum allowable percentage and this Honorable Court may decrease the

percentage fee accordingly.  And the Chapter 13 Trustee Handbook dated October 1, 2012 at

page 2-2 provides that the maximum allowable compensation is lesser of:

> a. an amount not to exceed the highest rate of basic pay in effect for level V of
>    the Executive Schedule plus cash value of employment benefits;
> b. five percent of all payments received under plans; and
> c. funds available for compensation (excluding prior year's operating reserve)."

19.    In fact, Section 326 of the Bankruptcy, while not applicable to standing Chapter

13 trustees, only permits a maximum 5% fee.  There is no reason that the fees of a standing

trustee should be double the fees and expenses of a non-standing trustee appointed by the Court.

And it should be further mentioned that upon information and belief, that neither the Chapter 13

Trustee nor the Office of the United States Trustee ever provided the Debtor advanced

notification prior to commencing her monthly plan payments that it had intended to take a 5% or

10% fee of the pre-confirmation payments whether or not the Debtor confirmed or did not

confirm her Chapter 13 plan; if so, the Debtor may have had the opportunity to file an applicable

motion for this Honorable Court's determination as to the fair and reasonable commission to be

paid to the Chapter 13 Trustee before she started making her required plan payments pursuant to

the provisions set forth in Section 1326(a)(1) of the Bankruptcy Code.  And given the amended

guideline for Chapter 13 trustees even if the Debtor and/or her attorney had analyzed the

monthly bank statements on-line, they may have thought that the percentage fees would have

been fully refundable without the taking of the 5% or 10% commission given its statement in the

List of Changes and Updates to the Handbook for Chapter 13 Standing Trustees dated May 2015.

In short, there was simply a unilateral taking of said moneys with little oversight possible, if any,

by the Debtor and/or her attorney.

## <u>AWARD OF ATTORNEY'S FEES</u>

20.    While it may be problematic whether the undersigned counsel is entitled to

attorney's fees in accordance with the provisions set forth in the Bankruptcy Code, as Section

101(27) provides an exception for United States trustees while serving as a trustee in a case

under this title, <u>Brandon v. Sherwood (In re Sann),</u> 546 B.R. 840 (Bkrtcy. D. Mont. 2016), the

provisions set forth in the Federal Tort Claims Act does provides the right to reimbursement of

attorney's fees, 28 U.S.C. 1346(b).  28 U.S.C. 1346(b) generally provides:

> "for injury or loss of property, or personal injury or death caused by the negligent or
> wrongful act or omission of act employee of the Government while acting within the
> scope of his office or employment, under circumstances where the United States, if a
> private person, would be liable to the claimant in accordance with the laws of the place
> where the act or omission incurred."

And as stated by the United States Supreme Court in <u>Berkovitz v. United States,</u> 486 U.S. 531,

108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), there is a "discretionary" exception to said statute.

<u>Berkovitz v. United States</u> stated at 486 U.S. at 535-536:

> "any claim … based upon the exercise or performance or the failure to exercise or
> perform a **discretionary function or duty** on the part of a federal agency or an
> employee of the Government, whether or not the discretion involved by abused.'
> 28 U.S.C. §2680(a).

> This exception, as we stated in our most recent opinion on the subject, 'marks the
> boundary between Congress' willingness to impose tort liability upon the United States
> and its desire to protect certain governmental activities from exposure to suit by private
> individuals.' *United States v. Varig-Airlines,* 467 U.S. at 808."

(Emphasis Added).

21.    First, under the laws of the State of New York, if an individual fails to return

rightful moneys to the proper recipient, the holder of the moneys is liable for said sum of

moneys, i.e., a robber of a retail establishment.  But more importantly, the Chapter 13 Trustee

and/or the Office of the United States Trustee is acting as an escrow agent of the moneys paid by

the Chapter 13 debtor prior to the confirmation of his or her plan.  <u>Sasidharan v. Piverger,</u> 145

A.D.3d 814, 44 N.Y.S.3d 85 (2nd Dept., 2016) stated at 145 A.D.3d at 815:

> "'An escrow agent 'not only has a contractual duty to follow the escrow agreement, but
> additionally becomes a trustee of anyone with a beneficial interest in the trust'' with 'a
> duty not to deliver the property held in escrow to anyone except upon 'strict compliance
> with the conditions imposed' in the escrow agreement.  Thus, an escrow agent can be
> held liable for breach of the escrow agreement and breach of fiduciary duty as escrowee."

(Citations Omitted).  Accordingly, under the laws of the State of New York, the Chapter 13

Trustee and/or the Office of the United States Trustee has breached its fiduciary duty to the

Debtor, who maintains a beneficial interest in the escrowed funds until and unless the Chapter 13

plan is confirmed.  Therefore, the Debtor has satisfied the first provision set forth in 28 U.S.C.

§1346(b) as a private individual/escrow agent would be so liable under the laws of the State of

New York for a violation of the escrow provisions.

      22.     The second provision of said statute is whether the entire return of the escrowed

moneys/the plan payments were discretionary or mandatory.  If discretionary, the Chapter 13

Trustee and/or the Office of the United States Trustee would not have to reimburse the legal fees

for the Debtor herein; however, if said return was mandatory, the "discretionary" aspect of 28

U.S.C. §1346(b) would be inapplicable.  Specifically, <u>Berkovitz v. United States</u> stated at 486

U.S. at 536:

> "Thus, the discretionary function exception will not apply when a federal statute,
> regulation, or policy specifically prescribes a course of action for an employee to follow.
> In this event, the employee has no rightful option but to adhere to the directive.  And if
> the employee's conduct cannot appropriately be the product of judgment or choice, then
> there is no discretion in the conduct for the discretionary function exception to protect Cf.
> *Westfall v. Erwin,* 484 U.S. 292, 296-297, 98 L.Ed. 2d 619, 108 S.Ct. 580 (1988)
> (recognizing that conduct that is not the product of independent judgment will be
> unaffected by threat of liability)."

And the Second Circuit stated in <u>Simmons v. United States,</u> 764 Fed. Appx. 98, 2019 U.S. App.

LEXIS 10904, 2019 WL 1552351 (2nd Cir. 2019) at 764 Fed. Appx. 98 at 99-100:

> "The FTCA (the Federal Tort Claims Act) waives sovereign immunity for certain damages claims.  <u>See</u> 28 U.S.C. §1346(b)(1).  The DFE excepts from this waiver claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'  §2680(a).  The DFE applies if the challenged conduct 'involves an element of judgment or choice.'  <u>Berkovitz by Berkovitz v. United States,</u> 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), and that judgment is 'based on considerations of public policy.'  <u>Id.</u> at 537.  'The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.'  <u>United States v. Gaubert,</u> 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)."

(Emphasis Added).  In the case at bar, there was no discretion that can be utilized as the statutory provision set forth in Section 1326(a) mandates that any and all of the plan payments made by the Debtor pre-confirmation must be returned to the Debtor, less any allowed administrative claim in accordance with the provisions set forth in Section 503(b) of the Bankruptcy Code. Section 503(b) of the Bankruptcy Code makes lucid that a Section 503(b) administrative expense may only be allowed after "notice and a hearing".  Herein, neither the Chapter 13 Trustee nor the Office of the United States Trustee ever sought a Section 503(b) administrative claim. Accordingly, the language set forth in Section 1326(b) of the Bankruptcy Code is clear and lucid that the Chapter 13 plan payments in full had to be reimbursed to the Debtor and there was no discretion involved.

23.    It should be noted that the Office of the United States Trustee is liable under the Federal Tort Claims Act for actions, of a mandatory nature, that the Chapter 13 Trustee fails to satisfy or conducts in direct contravention of a mandatory statutory authority.  The Chapter 13 Trustee is appointed by the Office of the United States Trustee and should comport himself or herself in compliance with the mandates of the Handbook for Chapter 13 Standing Trustees, plus updates thereto, published by the U.S. Department of Justice.  In fact, upon information and belief, the Chapter 13 Trustee forwarded all of the interim Chapter 13 plan payments to the fund

maintained by the Office of the United States and the Office of the United States Trustee sets the maximum amount of moneys that a standing Chapter 13 Trustee may retain on an annual basis; the balance is forwarded to the fund of the United States Trustee.  Accordingly, for purposes of the Federal Tort Claims Act, the Chapter 13 Trustee and the Office of the United States Trustee are personnel and an agency of the federal government respectively, subject to the provisions of the Federal Tort Claims Act.

24.    However, 28 U.S.C. §2678 entitled: "Attorney fees; penalty" provides in pertinent part:

> "No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any judgment rendered pursuant to section 1346(b) of this title …"

Accordingly, any fee to be awarded must be limited to 25% of the amount awarded; if the fee awarded to the Debtor is $20,592.00, the maximum fee that may be awarded to the undersigned counsel is $5,148.00.

25.    A copy of the undersigned counsel's time records to date are annexed hereto as Exhibit "D" and are incorporated herein by reference.

26.    No prior request for the relief set forth herein has been filed with this or any other Court.

WHEREFORE, the Debtor respectfully requests this Honorable Court to order the disgorgement of any and all fees, whether periodic or otherwise, retained by the Chapter 13 Trustee by the Chapter 13 Trustee and/or the Office of the United States Trustee in this dismissed Chapter 13 case totaling $20,592, or, alternatively, for this Honorable Court to set a fair and reasonable amount of fees to be retained by the Chapter 13 Trustee and order the disgorgement of the fees taken greater than this set amount, and to prohibit the Chapter 13

Trustee from disbursing any part of the Chapter 13 plan payments prior to the confirmation of

the Chapter 13 plan, the award of attorney's fees up to a maximum of 25% of the amount

ordered disgorged and for such other and further relief as is just and proper.

Dated:        Hauppauge, New York
             August 11, 2020

                              JEFFREY HERZBERG, P.C.
                              Successor Attorney for the Debtor Julia F. Soussis

                              By:__/s/ Jeffrey Herzberg _____
                                  Jeffrey Herzberg
                              300 Rabro Drive, Suite 114
                              Hauppauge, New York 11788
                              (631) 761-6558
                              jeff@jherzberglaw.com

## **Affirmation of Service**

        Jeffrey Herzberg, an attorney duly licensed to practice law in the courts of the State of

New York, after being duly sworn on oath, and under the penalty of perjury, affirms that on

August 11, 2020, he mailed a copy of the Notice of Hearing and the Motion for Disgorgement, et

al., with exhibits, by first class mail, under the jurisdiction of the United States Postal System,

postage prepaid, to:

        Michael J. Macco, Esq.
        2950 Expressway Drive South
        Suite 109
        Islandia, New York 11749

        Office of the United States Trustee
        560 Federal Plaza
        Central Islip, New York 11722

Dated:        Hauppauge, New York
             August 11, 2020

                                  /s/ Jeffrey Herzberg_____
                                  Jeffrey Herzberg