UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

**JULIA F. SOUSSIS,**

                            Debtor.

-----------------------------------------------------------x

<u>**Hearing Date and Time**</u>:
**Sept. 10, 2020 @ 10 am.**

Chapter 13
Case No. 19-73686 (reg)

**UNITED STATES TRUSTEE'S OPPOSITION TO
THE DEBTOR'S MOTION SEEKING ENTRY OF AN
ORDER DIRECTING THE CHAPTER 13 TRUSTEE
<u>TO DISGORGE AND FOR THE PAYMENT OF ATTORNEYS' FEES</u>**

**TO:    THE HONORABLE ROBERT E. GROSSMAN;
        UNITED STATES BANKRUPTCY JUDGE:**

        WILLIAM K. HARRINGTON, the United States Trustee for Region 2

(the "United States Trustee"), by his counsel, and in furtherance of his duties under 28

U.S.C. § 586 in opposition to the motion by Julia F. Soussis (the "Debtor") (ECF Docket

No. 41) seeking entry of an order directing the chapter 13 trustee to disgorge his statutory

commission and directing the payment of attorneys' fees (the " Disgorgement Motion"),

represents and alleges as follows:

**<u>PRELIMINARY STATEMENT</u>**

        This Debtor has filed five bankruptcy cases, all dismissed, and used up the

Court's and the Chapter 13 Trustee's time and resources in all of them; the Debtor's

latest case has taken up the Court's and the Trustee's time for more than a year.  Now, the

Debtor—after repeatedly using the bankruptcy system to stave off her creditors—

demands that she pay the Chapter 13 Trustee none of his statutorily-mandated percentage

1

fee and even wants the Chapter 13 Trustee and the United States Trustee to pay her attorneys' fees.

The Debtor's demands are not justified under the applicable statutes. Under 11 U.S.C. § 1326 and 28 U.S.C. § 586(e), the standing trustee is entitled to retain percentage fees in cases dismissed prior to confirmation. Section 586(e)(2) requires the trustee to collect his percentage fee from plan payments under all plans, whether or not they are confirmed. Section 1326(a)(2) requires the trustee to return plan payments to the debtor if no plan is confirmed – but specifically excepts amounts previously paid, which under the best reading of the applicable statutes includes percentage fees previously paid to the trustee. Thus, there is no conflict, and there is no need to disregard either statute.

Similarly, the Debtor's invocation of the Federal Tort Claims Act ("FTCA") in support of her request for attorney's fees is misplaced. The FTCA is a limited waiver of sovereign immunity, which authorizes only a narrow class of tort claims against the United States. And it authorizes suit on them only after the claimant timely exhausts mandatory agency review. It creates no cause of action against chapter 13 trustees, who are not governmental employees. Given these restrictions, the Debtor has no right to sue the United States Trustee, a federal official, or the chapter 13 trustee under the FTCA for attorney's fees. Accordingly, the Court should deny the Disgorgement Motion in its entirety.

## JURISDICTION, VENUE AND LEGAL BASIS FOR RELIEF

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, except that, as discussed below, the Court lacks subject matter jurisdiction over

Debtor's putative FTCA claims to the extent that Debtor has failed to exhaust her administrative remedies.

2.        Debtor's claims for relief under the Bankruptcy Code are a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Although the United States Trustee does not concede that Debtor's putative claims under the FTCA are core proceedings, the United States Trustee consents to the Bankruptcy Court's adjudication and entry of final judgment on those claims.

3.        Venue is proper in this court under 28 U.S.C. §§ 1408 and 1409.

## FACTS

4.        On May 20, 2019, the Debtor filed a voluntary chapter 13 petition. This was the Debtor's fifth bankruptcy filing, each of her prior cases having been dismissed.[1]  (See Bankruptcy Court Docket).   Michael Macco ("Trustee") is the chapter 13 trustee in Debtor's case.

5.        On June 18, 2019, the Debtor filed a plan under which she proposed to pay a lump sum of $380,000 (consisting of $80,000 derived from her IRA and $300,000 derived from her New York City Teacher's Retirement Account), and $1,000 payable monthly for the next sixty months (ECF Docket No. 8).

6.        Chase Mortgage Holdings, Inc., ("Chase"), a secured lender, objected to the plan (ECF Docket No. 14).  In response, on September 25, 2019, the Debtor amended her plan providing that in addition to the lump sum payment of

---

[1] 8-09-71064-reg Julia F Soussis  chapter 13 case filed on 02/23/09 dismissed on  5/15/09
8-09-79585-reg Julia F Soussis chapter 13 case filed on 12/14/09 dismissed on 2/22/10
8-10-74940-reg Julia F Soussis  chapter 13 case filed on 06/27/10 dismissed on  9/21/10
8-14-75507-reg Julia F Soussis  chapter 13 case filed on 12/13/14 dismissed on  4/17/15
8-15-72789-reg Julia F Soussis  chapter 13 case filed on 06/29/15  dismissed on 10/26/15

$380,000, the Debtor would remit four payments of $1,000 each, and 56 payments of $2,900 monthly for the remaining 56 months of the plan (ECF Docket No. 20).  On September 25, 2019, the Debtor also objected to Chase's Proof of Claim (ECF Docket No. 19), and on October 7, 2019, filed an amended objection (the "Claims Motion") to Chase's claim (ECF Docket No. 24).

7.      On July 19, 2019, the Trustee moved to dismiss the Debtor's case, contending that the Debtor had failed to provide all required documents (ECF Docket No. 13).

8.      On October 23, 2019, Chase responded to the Claims Motion by asserting that its claim was based on a state court foreclosure judgment entered on November 13, 2008, and that the Debtor's effort to relitigate the judgment through the Claims Motion violated the *Rooker-Feldman* doctrine. (ECF Docket No. 25).  The Debtor replied (ECF Docket No. 26), but the parties repeatedly adjourned both the Claims Motion and the Trustee's Motion.

9.      On June 10, 2020, the Debtor filed a letter (ECF Docket No. 35) withdrawing the Claims Motion, and on June 22, 2020, filed an application requesting that the case be dismissed and closed as soon as possible because there was no further need for the bankruptcy proceeding (ECF Docket No. 36).

10.     The Court dismissed the Debtor's bankruptcy case on June 30, 2020 (ECF Docket No. 37).

11.     On August 10, 2020, the Debtor filed a notice of substitution of counsel (ECF Docket No. 40), and on August 11, 2020 filed the Disgorgement Motion (ECF Docket No. 41).

12.     Under the terms of her proposed plan, which was never confirmed, the Debtor made payments to the standing chapter 13 trustee totaling $362,100.  *See* 11 U.S.C. § 1326(a)(1) (requiring a debtor to commence making plan payments to the trustee within 30 days).

13.     According to the Debtor's Disgorgement Motion, the Trustee's final report discloses that the Trustee refunded $341,508 to the Debtor, retaining $20,592, or approximately 5.69 percent, for "Trustee Expenses and Compensation."[2] (ECF Docket No. 41).

## ARGUMENT

14.     The Disgorgement Motion reflects an apparent unfamiliarity with chapter 13 law and practice.  The Debtor argues first that the Trustee should be required to disgorge to the Debtor the percentage fee the Trustee collected from the Debtor's plan payments  (as best as the United States Trustee can discern from her pleading) either because (i) the Trustee should instead be compensated under the Bankruptcy Code as an administrative expense, or (ii) the Trustee's fee should be limited to five percent.[3]  But the Debtor's arguments are unavailing.  The controlling statutes required the trustee to

---

[2]   The Trustee's statutory percentage fluctuates, as such the Trustee's statutory percentage fee for the periods was as follows: 3 percent for the period of 5/1/19 through 6/30/19; 1.5 percent for the period of 7/1/19 through 9/30/19; 5 percent for the period of 10/1/10 through 1/31/20; 7 percent for the period of 2/1/20 through 3/21/20; and 10 percent for the period of 4/1/20 through the present.  The Trustee has confirmed that he only collected the authorized percentage fees.

[3] At paragraph 10 of the Disgorgement Motion, the Debtor asserts that the Trustee's statutory fee should be governed under Bankruptcy Code section 326, yet at paragraph 19 of the Disgorgement Motion, the Debtor concedes that section 326 is inapplicable to chapter 13 trustees.  As set forth herein, under Bankruptcy Code section 1326(b) the Bankruptcy Court does not determine a standing trustee's compensation, and the Debtor's argument is meritless.

collect his percentage fee from the Debtor's pre-confirmation plan payments, and the best reading of the applicable law permits the Trustee to retain that fee after dismissal of the case.

15.     The Debtor also seeks compensation from both the Trustee and the United States Trustee for attorney's fees and costs under the FTCA.  This claim is replete with deficiencies.  First, the FTCA by its terms (and as a matter of blackletter law) is inapplicable to the Trustee because he is not a government employee.  Her claim against the United States Trustee under the FTCA also fails; it is grounded either in the misapprehension that the United States Trustee can be held derivatively liable for the Trustee's actions either because the Trustee is an agent or employee of the United States Trustee, or that the United States Trustee himself owes the Debtor a fiduciary duty. Those questions need not be reached, however, because the Debtor has failed to exhaust statutorily imposed, mandatory administrative remedies, which precludes her from raising FTCA claims here.

**THE CHAPTER 13 TRUSTEE MAY RETAIN HIS PERCENTAGE FEE, NOTWITHSTANDING THAT THE DEBTOR'S CASE WAS DISMISSED PRIOR TO CONFIRMATION**

**A.**     **Congress created a comprehensive scheme to compensate standing chapter 13 trustees for the work that they must do.**

16.     Individuals with regular income who have debts within statutory limits may file for chapter 13.  11 U.S.C. §§ 101(3) and 109(e).  Unlike chapter 7, chapter 13 debtors may keep their non-exempt assets and pay creditors under a court-approved plan using their future income.  *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010).

17.     A chapter 13 trustee "oversees the filing and execution of a Chapter 13 debtor's plan . . . ." *Id*.  *See* 11 U.S.C. § 1302 (tasking the chapter 13 trustee with numerous duties, including to account for property received, to "assist the debtor in performance under the plan . . . [and to] ensure that the debtor commences making timely payments under section 1326 . . .") *and* 1326(a)(2) (requiring him to disburse plan payments to creditors).  *See also* 8 *Collier on Bankruptcy* ¶ 1302.03[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2016).

18.     Chapter 13 trustees are appointed by the Attorney General and supervised by United States Trustees.  28 U.S.C. § 586(b).  The United States Trustee Program provides an array of guidance in its *Handbook for Chapter 13 Standing Trustees, Effective October 1, 2012* ("Handbook").[4]  As explained there, trustees must compile data and provide reports.  *Id*.  They are also bonded (see 11 U.S.C. §322(a)) and subject to audit.  *Id*.

19.     The Handbook for Chapter 13 Standing Trustees, while not law, provides the following as to calculation and collection of the percentage fee:

> D.      CALCULATION AND
>         COLLECTION OF PERCENTAGE FEE
>
>  A standing trustee's percentage fee is fixed by the Director by delegation from the Attorney General, after consultation with the United States Trustee for the region in which the standing trustee serves.  28 U.S.C. § 586(e)(1)(B).  The standing trustee has no authority to negotiate a percentage fee other than that fixed by the Director.
>
> The percentage fee is collected from all payments received by the standing trustee under the plan, including ongoing mortgage payments.  28 U.S.C. § 586(e)(2).  Any exceptions

---

[4] The Handbook is available at   http://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-13-handbooks-reference-materials.

to the collection of a fee on specific payments such as ongoing mortgage payments and domestic support obligations will be stated in the Director's notice fixing the percentage fee.   The percentage fee collected is the percentage fee in effect at the time the payment is received. The standing trustee is authorized to collect the percentage fee upon receipt of the payment. The trustee must transfer the percentage fee to the operating expense account at least monthly.   If the plan is dismissed or converted prior to confirmation, the standing trustee must reverse payment of the percentage fee that had been collected upon receipt if there is controlling law in the district requiring such reversal or if (after consultation with the United States Trustee) the standing trustee determines that there are other grounds for concern in the district.  If the standing trustee determines that all or part of the payment may not be a payment under the plan, the standing trustee may delay collection of the percentage fee on that payment or part of a payment until there is a determination of that issue.[Policy change effective October 1, 2014.]

Trustee Handbook for Chapter 13 Standing Trustees, Effective October 1, 2012.  As is relevant here, the Trustee's conduct complained of by the Debtor appears to be consistent with the Handbook.

20.    Congress has enacted a comprehensive scheme for compensating standing chapter 13 trustees to ensure that their operations are self-funded and that, as a result, all cases are professionally and economically administered, regardless of size.  *In re Harris*, 200 B.R. 745, 747 (Bankr. D. Mass. 1996).  At the heart of the system is a percentage fee that the trustees must collect "from all payments received by [the trustee] under plans in the cases under chapter  . . .  13 . . . ."  28 U.S.C. § 586(e)(2) ("Such individual *shall* collect such percentage fee *from all payments received by such individual under plans* in cases under . . . chapter 13 of title 11 for which such individual serves as standing trustee . . . .") (emphasis added).  "The percentage charges collected from cases in which the standing chapter 13 trustee serves are to be retained by the trustee to defray

the authorized salary and the actual, necessary expenses in carrying out the duties of his office . . . ." *Collier* at ¶ 1302.05.

21.    A chapter 13 trustee's salary and benefits are capped by 28 U.S.C. § 586(e)(1). All expenses of the trustee's operation have priority over the trustee's compensation. Collier, at ¶ 1302. And, any excess fees must be remitted to the United States Trustee System Fund. 28 U.S.C. §§ 586(e)(1), (2), 589a(b)(8).

22.    28 U.S.C. § 586(e) does not limit a chapter 13 trustee's fees to cases in which a chapter 13 plan is ultimately confirmed. To the contrary, section 586(e)(2) unambiguously directs the standing trustee to collect the percentage fee "*from all payments received* by [the trustee] *under plans*" in the cases in which the trustee serves (emphasis added). [5] There is no mention of plan confirmation, so this was intended to include both confirmed and unconfirmed plans. Congress routinely uses the term "plan" to include unconfirmed plans. [6]

23.    The Attorney General, in consultation with the United States Trustee, fixes each standing chapter 13 trustee's percentage fee, which cannot exceed 10

---

[5] The recent amendments under the Small Business Reorganization Act create special rules for trustee fees under subchapter v of chapter 11, but leave the provisions governing chapter 13 unchanged. *See* 11 U.S.C. § 586(e)(5).

[6] *See, e.g.*, 28 U.S.C. §586(a)(3)(B), (C) (requiring the United States Trustee to "monitor[] plans" including for the purpose of commenting on confirmation); 11 U.S.C. §§ 1321 ("debtor shall file a plan"); 1323(a) ("The debtor may modify the plan . . . before confirmation"). By contrast, when Congress wants to limit the meaning of "plan" to "confirmed plan," it says so explicitly. *See, e.g.*, 11 U.S.C. §§ 1306(b) ("Except as provided in a confirmed plan . . ."); 1307(c)(6) ("material default by the debtor with respect to a term of a confirmed plan"); 1307(c)(8) ("termination of a confirmed plan"); 1327(a) ("The provisions of a confirmed plan"); 1329(c) ("the first payment under the original confirmed plan"). *See also* similar references in 11 U.S.C. §§ 1141(a), 1142(b), 1207(b), 1208(c)(4), and 1227(a).

percent. 28 U.S.C. § 586(e)(1). Bankruptcy courts do not determine compensation for standing chapter 13 trustees. 11 U.S.C. § 326(b); *In re Bernard*, 201 B.R. 600, 603 (Bankr. D. Mass. 1996) (analyzing titles 28 and 11 and holding that a chapter 13 debtor had to make payments on a secured claim modified by his plan through the trustee, who was entitled to collect his percentage fee).

24.    Chapter 13 trustees incur significant expenses in every case in which they serve regardless of whether a plan is ultimately confirmed. If a chapter 13 trustee could not collect percentage fees in cases in which no plan is confirmed, expenses in those cases must be recouped by collecting a greater percentage of the plan payments in chapter 13 cases in which plans are confirmed. That means that the costs of administering cases in which no plan is confirmed would be borne by the debtors whose plans are confirmed, and debtors in cases in which no plans are confirmed would obtain benefits at no cost. That is neither equitable nor required by the relevant statutes.

**B.    Sections 1326 and 586(e) permit Trustee Macco to retain percentage fees in cases dismissed prior to confirmation.**

25.    28 U.S.C. § 586(e)(2) is unambiguous; it requires the trustee to collect a percentage fee in every case, whether or not a plan has been confirmed.

26.    11 U.S.C. § 1326(a)(2) provides that:

[a] payment made by a debtor under a chapter 13 plan *shall* be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments *not previously paid* and not yet due and owing to

creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b)[7] . . . .

(emphasis added).

27.    "The preeminent canon of statutory interpretation requires a court to 'presume that a legislature says in a statute what it means and means in a statute what it says there . . . .'" *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted).  If the text of a statute is unambiguous, the inquiry begins and ends there.  *Id*. at 254.

28.    While courts disagree whether a chapter 13 trustee may retain percentage fees collected where the case is dismissed prior to confirmation,  *see, e.g.,* Henry E. Hildebrand, III, *Behind the Curtain: The Chapter 13 Trustee's Percentage Fee*, 33 ABI Journal, 24 (Dec. 2014) (collecting cases), the better reading of the statutes supports chapter 13 trustees retaining the percentage fees they collect in cases that are dismissed prior to plan confirmation.

29.    A number of courts read the statutory text as authorizing trustees to keep fees in cases without confirmed plans.  *See Nardello v. Balboa (In re Nardello)*, 514 B.R. 105, 113 (D.N.J. 2014); *see also In re Sheedy*, No. 10-16236 (Bankr. D. Mass. Mar. 11, 2016) (Doc. 101); *In re Antonacci*, No. 08-23349 (Bankr. D. Nev. Dec. 27, 2011) (Doc. 171); *In re Cryder*, No. 11-56676 (Bankr. S.D. Ohio June 15, 2012) (Doc. 68).[8]

---

[7] Comparable provisions in chapter 12 and subchapter v of chapter 11 are structured differently: they mention the retention of trustee fees but do not authorize the trustee to deduct amounts "previously paid."  See 11 U.S.C. § § 1194(a), 1226(a).

[8] Cases on both sides acknowledge that the percentage fee is not an administrative expense that can be deducted, because standing trustees may receive only percentage fees.  See 11 U.S.C. §326(b) (prohibiting compensation for standing trustees)

30.    *Nardello* is persuasive because it applies sections 1326 and 586 harmoniously, which the dissenting *Acevedo* and *Dickens* decisions (discussed below) do not.  In *Nardello*, the district court agreed with *Acevedo* that, under sections 586(e)(2), 1326(a)(2), and 1326(b), the percentage fee is not only calculated based on all payments received by the trustee but is also distinct from plan payments to creditors.  *Id*. at 112-113.  It then held that, because section 1326(b) permits trustees to collect the percentage fee "[b]efore or at the time . . ." they make payments to creditors, retention was not contingent upon confirmation. *Id*. at 113-114.

> The Court must attempt to read Sections 586 and 1326 harmoniously . . . Because the percentage fee is separate and apart from payments to creditors, Section 1326(a) does not require that it be returned to the debtor. . . [T]he provision in Section 1326(a) for payments prior to confirmation and explicit reference in Section 1326(b) to taking a percentage fee before or at the time of payments to creditors suggests that confirmation is not required. Further, Section 1326(a) does not require the return of amounts intended to cover the percentage fee. The reading proposed by [the debtor], which would require the return of amounts for the percentage fee where plans are unconfirmed, renders the mandatory language of Section 586 meaningless . . . [T]he percentage fee is best viewed as a user fee . . .the end user is the debtor"

*Id*. at 113-114 (citations omitted).

31.    The district court found that two Code amendments supported its analysis.  First, Congress amended section 586(e)(2) to make the trustee's percentage fee applicable to "all payments *received* by [the trustee] under plans" (emphasis added), rather than as part of "all payments under plans," under the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554 (1986).  *Id*. at 110.  Second, section 1326(a) was added under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98–353, 98 Stat. 355 (the "1984 Act") to

require that debtors begin making plan payments within 30 days. *Id.* at 112. See *Collier* at ¶ 1326.LH.

32.    Thus, *Nardello* shows that giving sections 1326 and 586(e)(2) their plain meaning creates no conflict.

33.    *Nardello's* holding is further supported because a plausible reading of section 1326—even if it is ambiguous—allows it to be applied consistently with 28 U.S.C. § 586(e)(2).  First, section 1326(b) specifically permits the payment of the trustee's percentage fee "*[b]efore* or at the time of each payment to creditors under the plan" (emphasis added), and specifically references the percentage fee under 28 U.S.C. § 586(b).  Second, section 1326(a)(2) provides that "[i]f a plan is not confirmed, the trustee shall return any such payments *not previously paid* and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b)."  As noted above, 28 U.S.C. § 586(e)(2) specifically contemplates that a trustee may—and indeed "*shall*" —collect a percentage fee from "*all* payments received . . .  under plans" (emphasis added), regardless of whether such plans are confirmed.[9]  Therefore, the exception for amounts "previously paid" in section 1326(a)(2) should be read as including amounts previously collected by the trustee (in effect, paid by the trustee to him- or herself) under 28 U.S.C. § 586(e)(2).  Even if this is not the only possible interpretation of this provision, it is a reasonable interpretation and has the great advantage of not creating an unnecessary conflict between section 1326 and section 586.  By contrast, *Acevedo* proposes a tortuous interpretation of section 586(e)(2)

---

[9] *See* discussion at paragraph 26 above, showing that Congress consistently uses "plan" to include both confirmed and unconfirmed plans, and uses the term "confirmed plan" when it wishes to limit the meaning to confirmed plans.

that goes flatly against customary rules of statutory interpretation – and indeed, even the court in *Acevedo* conceded that it was engaging in "a somewhat unnatural reading" of section 586(e)(2).  *In re Acevedo*, 497 B.R. 112, 124 (Bankr. D.N.M. 2013).[10]

34.    Nevertheless, a few courts read sections 1326(a)(2) and 586(e)(2) as requiring inconsistent outcomes and have accorded greater weight to the former, directing trustees to disgorge their fees.  *See, e.g., Acevedo*, 497 B.R. at 122-123 (holding that section 586(e)(2) merely authorizes the trustee to collect and to hold percentage fees, while section 1326(a)(2) specifically controls disbursement of payments "after confirmation or denial of confirmation . . .").  *Accord, In re Dickens*, 513 B.R. 906 (Bankr. E.D. Ark. 2014) (allowing that while statutory interpretation is a "holistic endeavor," section 586(e)(2) is "ambiguous" and that section 1326(a) controls).

35.    But the interpretation of sections 586(e)(2) and 1326(a)(2) set out in *Nardello* is consistent even with *Dickens*.  The court in *Dickens* specifically found that section 586(e)(2) included unconfirmed plans, 513 B.R. at 911; and that section 586(e)(2) authorized the trustee to "collect" the fee—that is, "obtain payment"—from payments made under an unconfirmed plan, 513 B.R. at 911, 914; but also held that the trustee is required to return the fee if the plan is not confirmed.  *See* 513 B.R. at 914.  But if (as *Dickens* held) the trustee could properly collect the fee pre-confirmation, that means that

---

[10] *Acevedo's* suggestion that its conclusion is bolstered by 11 U.S.C. § 1226(a)(2), which requires a chapter 12 trustee to refund plan payments net of her percentage fee, is incorrect, because, unlike chapter 13, a chapter 12 debtor need not begin making plan payments in 30 days.  *Compare* 11 U.S.C. § 1326(a)(1) (providing that "Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier . . .") *with* 11 U.S.C. § 1226(a)(1) (containing no such requirement).  Similarly, section 1226 does not include the "amounts previously paid" exception set forth in section 1326(a)(2).

the fee was an amount "previously paid" under section 1326(a)(2) – and therefore does not have to be returned even if confirmation is denied.[11]

36.    Allowing the Trustee to retain his percentage fee in this case harmonizes sections 586(e) and 1326 so that each statute is equally enforced according to its plain terms and avoids requiring the Court to select one over the other.  Doing so also ensures that if a debtor in chapter 13 for an extended period, reaps the benefits of the automatic stay, uses up court and trustee resources, but fails to propose a confirmable plan, that debtor does not get a "free ride" at the expense of the debtors in other cases who meet their obligations in good faith to obtain plan confirmation.  Here, the United States Trustee's interpretation would ensure that the Trustee is compensated for the work that he had to perform.

37.    There are additional problems with the approach adopted in *Acevedo* and *Dickens*.   First, the unambiguous and mandatory language of 28 U.S.C. § 586(e)(2) provides that a trustee "shall collect such percentage fee from all payments received by such individual under plans in cases under . . . chapter 13 of title 11 for which such individual serves as standing trustee . . ." (emphasis added).  As discussed above, "plans" in this section can only be reasonably interpreted to include both confirmed and unconfirmed plans.  Second, contrary to the *Acevedo* court's assertion that "collect" means merely "collect [that is, gather] and hold" numerous court decisions have found in other contexts that the term "collect" means "to obtain payment."  Indeed, the *Acevedo* view would effectively make section 586(e)(2)'s command to "collect"

_____

[11] The court in *Dickens* did not address this issue.  The decision does not indicate that the chapter 13 trustee in that case had already paid herself the percentage fee prior to the dismissal.

superfluous (and therefore violate the canon against superfluity), because plan payments are already sent to the trustee and therefore are already in the trustee's possession. Thus, if "collect" merely means "gather" or "hold" and not "obtain payment," it is superfluous because the trustee necessarily always gathers and holds the plan payments.

38.    In addition, 28 U.S.C. § 586(e) does not contemplate that once a fee is collected, any part of it should be refunded to the debtor. To the contrary, it prohibits this by providing that excess amounts should be paid to the United States Trustee for deposit into the United States Trustee System Fund. 28 U.S.C. §§ 586(e)(2)(A), 589a(b)(8). Indeed, the debtor's interpretation could require the trustee to pay the same money twice; first to the System Fund, and then (after a failure to confirm a plan) to the debtor. Thus, a finding that the language of 11 U.S.C. § 1326(b) and (c) unambiguously requires the trustee to return the fee (which, as discussed herein, it does not), would create a serious question of how to resolve such a holding with the plain language of section 586(e).

39.    Section 1326(a)(2)'s legislative history does not suggest it was enacted to implicitly repeal or section 586(a)(2). Accordingly, each can and should be given equal weight and construed consistently with their own plain language and that of the others. See *State of R.I. v. Narragansett Tribe*, 19 F.3d 685, 703 (1st Cir. 1994) (stating that "so long as the two statutes, fairly construed, are capable of coexistence, courts should regard each as effective . . . .").

40.    The Debtor also argues that the amount of the fee—approximately 5.6 percent, by the Debtor's calculation—is too high. However, as set forth above, the standing trustee's compensation is a statutory fee set under the terms of 28 U.S.C.

§ 586(e), and the percentage fee is well under the 10 percent cap. And the Court may not adjust standing trustee compensation pursuant to section 326(b).

41. The Court should deny the Debtor's Disgorgement Motion. Allowing Trustee Macco to retain his percentage fee in this case is consistent with both sections 586(e) and 1326, which, as described above, may be read harmoniously and with full effect given to the plain language of each provision. Doing so also ensures that the Trustee is compensated for the work that he had to perform in the Debtor's case, consistent with his duties as chapter 13 trustee. *Nardello*; 11 U.S.C. § 1302; *Handbook*.

## DEBTOR'S ATTORNEY IS NOT ENTITLED TO COMPENSATION UNDER THE FTCA

42. The Disgorgement Motion's FTCA claims lack merit for several reasons. The United States Trustee responds below subject to his reservation of rights and defenses made in paragraph 56.

43. The United States, as sovereign, is immune from suit except to the extent that it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. *Makarova v. U.S.,* 201 F. 3d 110, 113 (2d Cir. 2000) (citing *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (internal quotation marks omitted)).

44. The doctrine of sovereign immunity is jurisdictional. *Makarova,* 201 F.3d at 113 (citing *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). For the Debtor to prevail on her request for attorney's fees against the United States Trustee, a federal official, 28 U.S.C. § 581(a)(2), she must establish that her

claims fall within an applicable waiver of sovereign immunity.  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir.1990); *Baker v. United States*, 817 F.2d 560, 562 (9th Cir.1987)).

45.    The Debtor couches her request for attorney's fees as a claim under the FTCA.  But, the plain language of the FTCA provides that the government waives sovereign immunity under its provisions only for government employees:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee of the Government* while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (emphasis added).

46.    The Debtor's reliance upon the FTCA is misplaced for several reasons: first, the FTCA is limited to actions against government employees, which precludes recovery against the chapter 13 trustee, who is not one; second, the Debtor has failed to exhaust her administrative remedies before suing under the FTCA; and third, even without sovereign immunity, the Debtor has not articulated any legal grounds to hold the United States Trustee liable for attorneys' fees.

47.    It is both obvious and settled that a bankruptcy trustee is not an employee or agent of the United States government.  "The bankruptcy trustee is the representative of the estate of the debtor, not an arm of the Government . . . ."  *California State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 849 (1989) (internal quotation marks, citations, and brackets omitted), *quoted in In re Bernard L. Madoff Securities LLC,* No. 16cv2792, 16cv2804, 16cv2806, 16cv2807, 2016 WL 3893765, at *3

(S.D.N.Y July 14, 2016).  28 U.S.C. § 586(a)(1) refers to them as "*private* trustees"
(emphasis added), and the Bankruptcy Code provides that they are representatives of the
estate (not of the government).  11 U.S.C. 323(a).  And bankruptcy trustees owe their
fiduciary duty to the estate.  Accordingly, the Second Circuit has "rule[d] that a private
bankruptcy trustee is not a government officer," and "[w]hether or not [bankruptcy]
trustees are conventional court officers, there is no doubt they are private parties, not
government employees . . . ."  *United States v. Crispo,* 306 F.3d 71, 80-81, 82 (2d Cir.
2002).  *See also, e.g., 2 Collier on Bankruptcy* ¶ 323.01 (16th ed. 2011) ("[T]he trustee is
the representative of the debtor's estate.")); *Richardson v. Mt. Adams Furniture (In re
Greene),*980 F.2d 590, 597 (9th Cir. 1992) ("[t]he trustee is a representative of the estate,
not an officer, agent or instrumentality of the United States."); *Griffith v. Oles (Matter of
Hipp, Inc.)*, 895 F.2d 1503, 1508 (5th Cir. 1990) (quoting *California Equalization
Board*); *Allnutt v. United States Department of Justice*, 99 F. Supp. 2d 673, 678 (D. Md.
2000) ("Trustees of bankruptcy estates are 'private trustees.'  They are not employees of
the U.S. Trustee or the Department of Justice.  Nor are they agents of the U.S. Trustee or
the federal government.").

48.    Moreover, "the mere appointment by a governmental entity does
not suffice to convert a bankruptcy trustee into a state actor." *In re Bernard L. Madoff
Securities LLC.,* 2016 WL 3893765, at *3.  "While the United States Trustee appoints the
private Chapter 7 Trustee, a Chapter 7 trustee is by no means an 'agent' of the United
States Trustee. The Chapter 7 Trustee is merely the legal representative of the bankruptcy
estate."  Id. at *3, quoting *In re Sharif*, 549 B.R. 485, 529 (Bankr. N.D. Ill. 2016)
(internal citation omitted).

49.     Consequently, the FTCA is wholly inapplicable to the Trustee and does not authorize the Debtor to seek relief against the Trustee directly under its provisions.

50.     Moreover, because the Trustee is not the United States Trustee's employee or agent, the Debtor also cannot articulate any viable theory under which the United States Trustee is liable for the Trustee's actions.  In an effort to fit within the FTCA, the Debtor asserts, without citation to any authority, that a private trustee's obligation to hold the Debtor's funds creates an "escrow," and then incorrectly asserts that both the Trustee and United States Trustee breached their "fiduciary duty" to the Debtor, because the payment of the Trustee's percentage fee somehow breached the "escrow."  The Debtor further asserts that the United States Trustee is then liable for the actions of the Trustee.  Providing no authority—because none exists—the Debtor simply asserts that "[t]he Office of the United States Trustee is liable under the Federal Tort Claims Act for actions, of a mandatory nature, that the Chapter 13 Trustee fails to satisfy or conducts in direct contravention of a mandatory statutory authority."  Debtor's Motion at ¶ 23.  Other than the Debtor's meritless argument that the Trustee and the United States Trustee breached the "escrow,"  the Debtor cites no law supporting its request that the United States Trustee, if a private person engaged in the same behavior (as required by 28 U.S.C. § 1346(b)), would have incurred any liability to the Debtor.

51.     This argument is meritless.  First, and again, the Trustee is not subject to the FTCA.  Second, because the Trustee is not a governmental employee or agent, there is no theory under which the United States Trustee is liable for the Trustee's actions.  Third, the United States Trustee owes no fiduciary duty to the Debtor.  Fourth,

even if the Debtor could clear these formidable hurdles (and the jurisdictional hurdle described below), the Trustee acted completely lawfully, as described above, causing the Debtor's "escrow" argument—already grounded on an implausible reading of New York state law—to fail even on its own terms.  And finally, the Debtor fails to articulate any statutory basis to recover her *attorney's fees* notwithstanding the American Rule, under which it is well-settled that "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53, 130 S. Ct. 2149 (2010)).

52.     In any event, the Court presently lacks subject matter jurisdiction over the Debtor's putative FTCA claim against the United States Trustee.  The United States Trustee is a Justice Department official.  28 U.S.C. § 581(a)(2).  Under 28 U.S.C. § 2675,  prior to the institution of any action against the United States based upon a government employee's action within the scope of that employee's employment, "the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."

53.     A claimant's failure to exhaust its administrative remedies requires the dismissal of claims asserted under the FTCA based upon a lack of subject matter jurisdiction.  *See DeBoe v. Du Bois*, 503 F. App'x 85, 89 (2d Cir. 2012); *see also Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 720 (2d. Cir. 1998) ("In sum, the United States has not consented to be sued on a tort claim unless the claim was first

presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing.").

54.     The Debtor has not complied with the requirements of 28 U.S.C. § 2675.  As such, her request for fees must be denied because the Court lacks subject matter jurisdiction.

55.     In summary, the Debtor's has failed to articulate any legal or factual basis for holding the Trustee or the United States Trustee liable for her attorney's fees.  As discussed above, the United States Trustee is *not* liable for the actions of a bankruptcy trustee, nor does the United States Trustee owe the debtor any fiduciary duty. Even if the FTCA was applicable, which it is not because the Trustee is not a government employee or agent, the Debtor has failed to comply with the notice requirements and has failed to proceed by way of an appropriately filed complaint.  Additionally, even if the Debtor did proceed by filing a complaint, because the FTCA is inapplicable, the complaint would be subject to dismissal under Fed. R. Civ. P. 12, for a lack of subject matter jurisdiction.

56.     The Debtor's claim under the FTCA must be denied as to the Trustee because he is not a government employee and because the Debtor has failed to state a claim for which relief could be granted, and must be also denied as to the United States Trustee for the reasons set forth herein, including lack of subject matter jurisdiction and the Debtor's failure to state a claim for which relief could be granted. The United States Trustee reserves all rights and defenses with respect to any claims asserted against him by the Debtor in future, under the FTCA or otherwise, and whether asserted administratively or judicially.

## CONCLUSION

57.    For the reasons set forth herein, the Disgorgement Motion must be wholly denied.  The Trustee properly collected, and may properly retain, the percentage fee he collected from the Debtor's payments under her chapter 13 plan, and the Debtor may not recover attorney's fees and costs (regardless of the Court's holding with respect to the Trustee's percentage fee) under the FTCA.

**WHEREFORE,** the United States Trustee requests that the Court deny the Disgorgement Motion in its entirety and grant such other and further relief as may be just and proper.

Dated:  Central Islip, New  York       WILLIAM K. HARRINGTON
       September 2 , 2020          UNITED STATES TRUSTEE  REGION 2
                                   Office of the United States Trustee
                                   560 Federal Plaza
                                   Central Islip, New York  11722
                                   Telephone  631 715 7800

                                   By: /s/  Christine H. Black

                                   Christine H. Black
                                   Assistant United States Trustee