U NITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In Re:

                                      Case No. 19-73686-reg

JULIA F. SOUSSIS,                  (Chapter 13)

      Debtor

-----------------------------------------------------------x

**REPLY TO: (A) THE UNITED STATES TRUSTEE'S OPPOSITION TO THE DEBTOR'S MOTION SEEKING ENTRY OF AN ORDER DIRECTING THE CHAPTER 13 TRUSTEE TO DISGORGE AND FOR PAYMENT OF ATTORNEYS ' FEES; AND (B) THE CHAPTER 13 TRUSTEE'S MEMORANDUM OF LAW IN OPPOSITION TO DEBTOR'S MOTION FOR DISGORGEMENT OF ALL FEES PAID TO THE CHAPTER 13 TRUSTEE**

To the Honorable Robert E. Grossman,
United States Bankruptcy Judge:

      The Debtor Julia F. Soussis ("Soussis" or the "Debtor"), by and through her successor attorney, Jeffrey Herzberg, P.C., files this reply to: (a) the United States Trustee's opposition to the Debtor's motion seeking entry of an order directing the Chapter 13 Trustee to disgorge and for payment of attorneys' fees; and (b) the memorandum of law in opposition to debtor's motion for disgorgement of all fees paid to the Chapter 13 Trustee, states as follows:

      1.      The Debtor filed her notice of hearing and motion for disgorgement of Chapter 13 fees, the reimbursement of attorney's fees pursuant to the Federal Tort Claim Act (the "Federal Tort Claims Act") and for other relief dated August 11, 2020 and the: (a) United States Trustee (the "UST") filed its opposition thereto dated September 2, 2020; and (b) Chapter 13 Trustee filed his undated memorandum of law in opposition (filed on the ECF court-computer system on September 3, 2020). Soussis is now filing her reply to the oppositions by the UST and the Chapter 13 Trustee. Please note that while the pleadings appear different, the oppositions by the UST and the Chapter 13 Trustee rely heavily on the provisions set forth in 28 U.S.C. §586(e)(2) and Nardello v. Balboa (In re Nardello), 514 B.R. 105, 110 (D.N.J. 2014), but do not address: (a)

the provisions set forth in 11 U.S.C. §1326; (b) the differences between Sections 1226 (applicable to Chapter 12 cases) and 1326 (applicable to Chapter 13 cases); and (c) the progeny of case law interpreting the holding in <u>In re Nardello.</u>

2.      The UST and the Chapter 13 Trustee also failed to address that the Chapter 13 Trustee unilaterally, without any notice to the Debtor or the issuance of an order from this Honorable Court, periodically transferred $20,592.00 to himself and/or to the UST.  The only authority that the UST proffered for making the unilateral withdrawals was the provisions set forth in 28 U.S.C. §586(e)(2) without any consideration of the provisions set forth in Section 1326 of the Bankruptcy Code.  Section 1326(a)(2)(A) specifically states:

> **"If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b)."**

(Emphasis Added).  In short, the UST and the Chapter 13 Trustee are seeking to disavow the provisions set forth in Section 1326 of the Bankruptcy Code.  A greater discussion as to the interplay of these statutes appeared in the motion and will be further addressed below.

3.      It should be noted that both the UST and the Chapter 13 Trustee attempted to portray Soussis in a negative light given the number of her prior Chapter 13 filings, but failed to note that the Chapter 13 Trustee failed to prevail in a motion for dismissal of the current Chapter 13 action due to bad faith or the like.  In fact, the Chapter 13 Trustee and/or the UST was able to unlawfully and improperly retain the $20,592 in payments due solely to the continuation of the current Soussis Chapter 13 case.

4.       Soussis only sought the dismissal of the current Chapter 13 case upon the encouragement of the undersigned counsel due to the passage of a new statute under the laws of the State of New York, namely RPAPL §1302-a which became effective on December 23, 2019.

2

RPAPL §1302-a created the right of Soussis to contest the standing of the mortgagee notwithstanding her prior default in answering the state court summons and complaint.  And, upon information and belief, Soussis was always seeking to contest the standing of the mortgagee to commence and prosecute the state court action since the issuance of the state court default judgment; that was indeed the purpose of the appeal by Soussis to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Dept"), namely to ultimately contest the standing issue given the proffer by the mortgagee of a lost note affidavit.  In fact, the undersigned counsel would probably have encouraged Mr. Guerrero to seek to vacate and annul the mortgage (secured claim) by this Honorable Court if counsel felt confident that Soussis was not going to be burdened by the doctrines of res judicata/collateral estoppel notwithstanding that the Supreme Court of the State of New York, County of Nassau, did not make a specific finding on the standing issue.

5.      And as stated in Paragraph No. 9 of the motion, Soussis would not have opposed the awarding of reasonable compensation to the Chapter 13 Trustee, but a Chapter 13 trustee fee of $20,592.00 in an unconfirmed Chapter 13 case is excessive especially compared to the $4,000 that Ivan E. Guerrero, Esq. received as the Debtor's Chapter 13 attorney.

**Relationship Between 28 U.S.C. §586(e)(2) and 11 U.S.C. §1326**

6.      The UST and the Chapter 13 Trustee highlighted that certain provisions set forth in 28 U.S.C. §586(e)(2) would appear to permit and authorize the unilateral taking of said moneys by the Chapter 13 Trustee, however, said provisions must be examined along with the provisions set forth in Section 1326 of the Bankruptcy Code.  And Section 1326(a)(2)(A) of the Bankruptcy Code specifically prohibits the unilateral taking of any fees by the Chapter 13 Trustee and/or the UST as set forth in the motion and above except awarded administrative

expenses pursuant to Section 503(b) of the Bankruptcy Code.  And the Chapter 13 Trustee never

sought to be awarded administrative expenses pursuant to Section 503(b) of the Bankruptcy

Code. Please see Footnote 12 in  In re Crispin, 2019 Bankr. LEXIS 1575 at 13 (Bktcy. D. N.M.

2019).

       7.     In support of their positions, the UST and the Chapter 13 Trustee cited

extensively from Nardello v. Balboa (In re Nardello), 514 B.R. 105, 113 (D.N.J. 2014)

("Nardello").  However, the UST and the Chapter 13 Trustee failed to note that the holding in

Nardello was widely criticized by numerous courts thereafter, who have maintained the better

reconciliation of the conflicts in the language, if any, between the two (2) statutes are set forth in

In re Acevedo, 497 B.R. 112 (Bkrtcy. D.N.M. 2013)(an en banc decision) and In re Dickens, 513

B.R. 906 (Bkrtcy. E.D. Ark. 2014).  In fact, Sikes v. Samuel, 559 B.R. 135, 2019 U.S. Dist.

LEXIS 133758 (W.D. La. 2016) is a case as to whether the Chapter 13 trustee was entitled to

retain his percentage commission on insurance proceeds received by the Chapter 13 trustee due

to a motor vehicle accident involving the Chapter 13 debtor's vehicle and which retention of fees

was objected to by the secured creditor (the lien holder of the car) and the debtor,  Sikes v.

Samuel stated at 559 B.R. 139-140:

> "Additionally, to the extent the Nardello court interpreted 28 U.S.C. §586(e)(2), the
> Court finds its analysis unpersuasive.  Though the Nardello court did recognize the
> statute's language stating that only payments received by the trustee 'under plans' qualify
> for the payment of a fee to the trustee, the court never fully addressed this issue.  See id..
> at 110-12, 116-17.  Instead, though the court quoted the 'under plans' language, it
> concluded that 'amounts received under plans refers to all monies received by the
> standing trustee,' essentially ignoring the 'under plans' language, it concluded that
> 'amounts received under plans refers to all monies received by the standing trustee,'
> essentially ignoring the 'under plans' language.  Id. at 111.  The debtor argued that
> because a part of the proceeds of the sale were never the debtor's property at all but
> instead belonged to the co-owners, the payment… Thus, because of the factual
> differences between this case and Nardello and the fact that the Court finds Nardello's
> interpretation of 28 U.S.C. §596(e) to be inconsistent with the statute's plain language,
> the Court does not find the Nardello analysis persuasive."

4

In fact, <u>In re Dickens</u> stated at 513 B.R. at 907-908:

> "The issue before the Court is whether the Trustee is permitted to retain a collected percentage fee provided for by 28 U.S.C. §586 when the Debtors' case was dismissed prior to confirmation of a plan. This issue has been percolating through the courts recently. Joined by the U.S. Trustee, the Trustee asserts that §586 unambiguously provides for the retention of the fee in such cases. The Debtors argue that §586 is ambiguous and must be read in conjunction with 11 U.S.C. §1326(a) of the Bankruptcy Code. By reading these statutory provisions together, the Debtors maintain that they are entitled to a refund of certain percentage fees collected by the Trustee in their case. For the reasons set forth below, the Court finds that the Trustee must remit the percentage fee to the Debtors."

(Footnote Omitted. In reconciling the differences between <u>Acevedo/Dickens</u> and <u>Nardello, In re Lundy,</u> 2017 Bankr. LEXIS 3317 (Bkrtcy. N.D. Ohio 2017), <u>In re Crespin,</u> 2019 Bankr. LEXIS 1575 (Bkrtcy. D.N.M. 2019) and <u>In re Evans,</u> 2020 Bankr. LEXIS 382 (Bkrtcy. D. Idaho 2020) sided with the <u>Acevedo/Dickens</u> analysis. <u>In re Evans</u> first analyzed the provisions set forth in Chapter 12 bankruptcy cases and recognized that Section 1226 of the Bankruptcy Code specifically authorized and permitted the payment of Chapter 12 trustee interim payments pre-confirmation of plan payments, whereas such interim trustee fees are disallowed in Chapter 13 cases pursuant to the provisions set forth in Section 1326 of the Bankruptcy Code. <u>In re Evans</u> when analyzing the prior case law stated at 2020 Bankr. LEXIS 382 at *21-*27:

> "C. <u>Relevant Case Law</u>
>
> There is no controlling precedent or case law to which this Court is bound. Trustee relies on the decision of *In re Nardello* to support her position. 514 B.R. 105 (D.N.J. 2014). In that case, the debtor filed a chapter 13 petition. *Id.* at 106. During the pendency of the case, but before confirmation, a third party filed a motion seeking court approval for the sale of real estate jointly owned by the third party and the debtor. *Id.* The bankruptcy court authorized the sale of the property, the debtor consented to the distribution of proceeds, and the court ordered the proceeds to be held by the standing trustee pending further order from the court. *Id.* The court then ordered the trustee to pay the third party their one-half share of the proceeds from the sale of the real estate, as well as the remaining proceeds of the sale which debtor owed for payment of debtor's share of the mortgage on the property. *Id.* at 107. These disbursements were made according to the court order not pursuant to the plan. *Id.* The case was then voluntarily dismissed. *Id.* The standing trustee filed a final report and accounting, retaining trustee expenses and

compensation based on the pre-confirmation payment disbursements to the third party. *Id.* The debtor objected to the trustee percentage fee. *Id.*

The bankruptcy court found in favor of the standing trustee. *Id.* The bankruptcy court held that §1326(a)(2) and (b) only apply to the payments made as proposed by a plan. *Id.* Because the funds on which the trustee's percentage fee was based were not payments proposed by the plan, §1326(a)(2) and (b) did not apply. *Id.* The bankruptcy court held that applied, and distinguished the case from cases where no payments were made to creditors pre-confirmation on the grounds that the debtor had consented to the disbursement of funds to the third party from the sale of the jointly held real estate prior to plan confirmation. *Id.* at 108.

The case at bar is distinguishable. Indeed, the court in *Nardello* distinguished the facts of that case from other cases because the court was considering whether the percentage fee payment was appropriate if payments are disbursed prior to plan confirmation but upon debtor approval, as well as payments received by the trustee that were not contemplated by the plan. On appeal, the district court distinguished *Acevedo, Miranda* and *Rivera, supra* at fn. 2, because, in *Nardello*, the standing trustee was required to hold the sale proceeds from the property pre-confirmation 'even though [the] proceeds were not contemplated in Debtor's initial plan. Had the Standing Trustee not been required to hold the sales proceeds, there would be no justification for the percentage fee sought.' *Id.* at 116.

Here, there are no sale proceeds held by the Trustee or disbursements made, only payments to the Trustee pursuant to, and contemplated by, the plan pre-confirmation. The debtor did not consent to any disbursements by the trustee prior to confirmation. Additionally, the Trustee was not required to disburse any creditor payments like the trustee in *Nardello* prior to plan confirmation. Thus, *Nardello* is not on point.

Next, the U.S. Trustee disagrees with a New Mexico bankruptcy court's interpretation of the two conflicting statutes. Dkt. No. 34. The facts of *In re Acevedo* are similar to those presented here. 497 B.R. 112. (Bankr. D.N.M. 2013). In that case, the debtors filed a chapter 13 bankruptcy petition, made payments to the trustee pursuant to the plan, but the plan was never confirmed. *Id.* at 114-15. Instead, the chapter 13 case was converted to a chapter 7. *Id.* The trustee kept a commission on the payments received from the debtors and disbursed the remaining balance. *Id.* at 115. The debtors filed motions to disgorge the fees retained by the trustee. *Id.* The trustee and the Office of the United States Trustee objected. *Id.* The court required disgorgement, reasoning that there were at least three ways to construe §586(e)(2), and the 'most harmonious reading of the two statutes is that §586(e)(2) directs the trustee to collect and hold the percentage fees pending plan confirmation, while §1326(a)(2) tells the trustee when and how to disburse payments after confirmation or denial of confirmation, including the trustee's percentage fee.' *Id.* at 122.

The U.S. Trustee argues, 'even the court in *Acevedo* conceded that it was engaging in 'a somewhat unnatural reading of section 586(e)(2).'' Dkt. No. 34 (quoting *In re Acevedo,* 497 B.R. at 124). However, it is important to consider the full context of that quotation. The *Acevedo* court goes on to say, in the very next sentence, 'The only alternative, however, is a substantially less natural reading of §1326(a).' *Id.* at 124-25. 'What's

good for the goose is good for the gander.' *Bates v. Jones,* 131 F.3d 843, 861 (6th Cir. 1997).  If 'a somewhat unnatural reading' would be unfavorable, a 'substantially less natural reading is even more unfavorable.

The Trustee directs the Court to the holding in *In re Antonacci,* No. BK-S-08-23349-LBR (Bankr. D. Nev. Dec. 27, 2011).  The Court has reviewed that docket.  The docket number in that case to which the Trustee cites is the U.S. Trustee's brief in support of the standing chapter 13 trustee's entitlement to fees.  *Brief of the Acting United States Trustee regarding the Trustee's entitlement to fees* at 168.  *In re Antonacci,* No. BK-S-08-23349-LBR (Bankr. D. Dec. 27, 2011).  The U.S. Trustee in that case has a similar argument to the U.S. Trustee in this case.  Here, the Trustee argues that the decision in *Antonacci* 'was instrumental in causing the policy change in the [U.S.] Trustee's Handbook… Dkt. No. 39.

In an article focusing on chapter 13 issues and projects in 2014, published by the Executive Office for U.S. Trustees, Martha Hallowell, the Deputy Assistant Director for Standing Trustee Oversight, discussed the policy change mentioned by the Trustee.  *See* Martha Hallowell*, Successful Projects in 2014 Include Training, Percentage Fee Policy and Unsecured Claims Review,* EXEC. OFFICE FOR U.S. TRS., https://www.justice.gov/us/file/nactt_201503.pdf/download.  The percentage fee policy was changed in July 2012 in response to the *Antonacci* decision, informing 'standing trustees that they could collect and retain a percentage fee on receipts in cases that dismiss or convert prior to confirmation.  *Id.* In 2014, the percentage fee policy was changed again.  *Id.*  This change allowed standing trustees to collect their fees upon receipt of payment.  *Id.*  The article states that the 'policy conclusion was the result of a detailed analysis of 28 U.S.C. §586(e)(2) as part of *our* brief filed in *In re Antonacci* …' *Id.* (emphasis added).  Thus, the policy change, in part, was a result of the U.S. Trustee's own detailed analysis as part of the brief it filed in *Antonacci.*

The order granting trustee's fees in *Antonacci* is not so detailed.  It is two pages long and contains no analysis.  Order Allowing Trustee Fees Under 28 U.S.C. §586(e) at 171, *In re Antonacci,* No. BK-S-08-23349-LBR (Bankr. D. Nev. Dec. 27, 2011).  Accordingly, this Court does not find that order to be persuasive to the analysis in this case.

The court in *In re Dickens* cites numerous cases and court orders that fall on both sides of this issue.  *In re Dickens,* 513 B.R. at 908, n.1.  That court found, notably, 'none of the reported orders supporting the retention of the percentage fee provide an extended statutory analysis of the issue, and in some cases, it appears no objection or responsive pleading was filed.'  *Id.*

### Conclusion

This Court believes the correct interpretation falls in line with the reasoning of *Acevedo. Dickens* and *Lundy.*  Section 586(e)(2) directs the trustee to collect and hold the payments pending plan confirmation and the source from which to collect the percentage fee, while §1326(a)(2) tells the trustee when and how to disburse payments before or after confirmation.  Accordingly, the trustee must hold the payments in her possession until confirmation or denial of confirmation.  If a chapter 13 case is dismissed, pre-confirmation, as in this case, the trustee shall return any such payments not previously

paid and not yet due and owing to creditors to the debtor, including the trustee's percentage fee.  Debtor's objection to the Trustee's final report and account is sustained."

(Footnotes Omitted) (please note that the UST cited <u>Antonacci</u> in support of its position in Paragraph No. 29 of the UST Oppositon).  <u>In re Lundy,</u> 2017 Bankr. LEXIS 3317 (Bkrtcy. N.D. Ohio 2017) concluded that the Chapter 13 trustee is not entitled to collect and/or retain any fees if the Chapter 13 case is dismissed or converted prior to plan confirmation.  When considering the interpretation of the interplay of 28 U.S.C. §586(e)(2) and Section 1326 of the Bankrupty Code as set forth in <u>In re Nardello,</u> <u>In re Lundy</u> stated at 2017 Bankr. LEXIS 3317 at *19-*20:

> "The court also finds the interpretation in *Nardello* to be a strained reading of §1326(b). This court finds reference to '*each* payment to creditors under the plan' clearly suggests more than one payment to creditors and is a reference to periodic payments due to creditors under a confirmed Chapter 13 plan.  *Cf. In re DeSardi,* 340 B.R. 790, 809 (Bankr. S.D. Tex. 2006)('[P]ayment to creditors under the plan' refers to periodic partial payments on claims.').  Also, reference in §1326(b)(1) to payment of claims specified in §507 is the priorities provision of the Bankruptcy Code.  Priority claims are not paid until a plan is confirmed.  Likewise, reference in §1326(b)(3)(A) to the manner in which the unpaid compensation of a Chapter 7 trustee is to be paid after dismissal or conversion to a Chapter 13 case – 'over the remaining duration of a plan … by monthly payments' – clearly refers to a confirmed plan. 11 U.S.C. §1326(b)(3)(A).  There is no suggestion in §1326(a)(2) or §1326(b) that unpaid Chapter 7 trustee compensation may be paid before confirmation of a debtor's Chapter 13 plan.  The court thus reads §1326(b) as setting forth priority payments to be made before or at the time of payment to creditors under a confirmed plan.  *See id.* (quoting S. Rep. No. 95-989 at 142 (1978), 1978 U.S.C.C.A.N. 5787, 8928 ('Section 1326 supplements the priorities provisions of section 507.')).  The court concludes that §1326(b) does not contemplate payment of the trustee's percentage fee if a debtor's Chapter 13 plan is never confirmed.  *Acevedo,* 497 B.R. at 121."

And <u>In re Lundy</u> emphasized at 2017 Bankr. LEXIS 3317 at *20 that while the language of §1326 is clear and lucid, it is the language set forth in 28 U.S.C. §586(e)(2) that lacks clarity and identifies the three possible constructions set forth in <u>Acevedo</u> and <u>Dickens</u>; please see Soussis's motion papers for said analysis of the three (3) possible constructions.  <u>In re Lundy</u> stated at *26-*28:

> "To the extent the *Nardello* court's conclusion was based on the fact that the real estate sale proceeds were not a source of the payments proposed by the debtor's plan and thus that §1326(a)(2) did not apply, the case is factually distinguishable.  All of the payments

to the Trustee in this case were payments under Debtors proposed plan(s).  To the extent the court's conclusion was based on its determination that §1326(a)(2) is silent as to whether the percentage fee must be returned when a plan is not confirmed, its analysis is unpersuasive.  As discussed earlier, §1326(a)(2) addresses what the trustee must do with the payments 'made under paragraph (1)(A),' which are described as payments 'in the amount – proposed by the plan.'  Even the *Nardello* court found that the amounts received by the trustee under the plan 'cover both payments to creditors and the trustee's percentage fee.'  *Id.* at 112-13.  The payment amounts that must be returned to debtors when their plan is not confirmed must include the trustee's percentage fee.

In summary, the court concludes that §586(e)(2) requires a standing Chapter 13 trustee to collect the applicable percentage fee from all payments that the trustee receives under both confirmed and unconfirmed plans and to hold the fee collected pending plan confirmation.  Disbursement of the payments being held, which include the percentage fee, is governed by §1326(a)(2) and (b).  Where a plan is not confirmed, §1326(a)(2) requires the trustee to return all such payments, including the statutory percentage fee being held by the trustee, after deducting any allowed administrative expense claims."

Please see also In re Crespin, 2019 Bankr. LEXIS 1575 (Bkrtcy. D.N.M. 2019) (please note it is the same federal district that decided In re Acevedo and by one of the same bankruptcy judges).

8.      It should be further noted that neither the UST nor the Chapter 13 Trustee commented upon the List of Changes and Updates to the Handbook for Chapter 13 Standing Trustees dated May of 2015 (Exhibit C of the Soussis Motion).  The supplement stated in pertinent part:

"If the plan is dismissed or converted prior to confirmation, the standing trustee must reverse payment of the percentage fee that had been collected upon receipt if there is controlling law in the district requiring such reversal or ,,,:"

Interestingly, neither the UST nor the Chapter 13 Trustee commented why there is a difference in districts when both Section 1326 of the Bankruptcy Code and 28 U.S.C. §586(e)(2) are uniform laws throughout our country.

9.      Accordingly, as set forth in the Soussis motion papers and above, the Chapter 13 Trustee must return all of the plan payments made by Soussis, without subtracting his percentage fee.  In fact, it probably was unlawful for the Chapter 13 Trustee to take any periodic percentage

9

fees until and unless the Chapter 13 plan is confirmed in accordance with the provisions set forth

in Section 1326 of the Bankruptcy Code.

### Soussis Is Entitled to Attorneys' Fees in Accordance with the Federal Torts Claim Act

10.      The UST claimed in its opposition that Soussis is not entitled to attorney's fees in

accordance with the provisions set forth in 28 U.S.C. §1346(b) as the Trustee is not an employee

of the federal government and Soussis' failure to exhaust the administrative agency remedies.  28

U.S.C. §1346(b) generally provides:

> "for injury or loss of property, or personal injury or death caused by the negligent or
> wrongful act or omission of act by an employee of the Government **while acting within
> the scope of his office** or employment, where the United States, if a private person,
> would be liable to the claimant in accordance with the laws of the place where the act or
> omission occurred."

(Emphasis Added).  The UST argued that pursuant to United States v. Crispo, 306 F.3d 71, 82,

2002 U.S. App. Div. LEXIS 20324 (2nd Cir. 2002) that a private bankruptcy trustee is not a

governmental employee, but United States v. Crispo also stated at 306 F.3d at 81:

> "The Bankruptcy Act of 1898, 30 Stat. 544 (Bankruptcy Act), which created the position
> of bankruptcy trustee, gives us the answer to both questions.  The answer in each case is
> 'yes.'  In §1 of the Bankruptcy Act, entitled 'Meaning of Words and Phrases,' Congress
> that the term 'officer' shall include clerk, marshal, receiver, referee, *and trustee.*'
> (Emphasis Added).  Thus, in the specific context of bankruptcy proceedings, Congress
> placed trustees in the category of court officers that *Cammer* would list as paradigmatic
> conventional officers.  Accordingly, a trustee in bankruptcy is also a conventional court
> officer protected by the court officer prong of §1503 (18 U.S.C. §1503 – an obstruction
> charge against a bankrupt debtor who threatened the attorney employed by the Chapter 7
> trustee)"

(Emphasis Added).  See also Conn. Bar Ass'n v. United States, 620 F.3d 81, 98, 2010 U.S. App.

Div. LEXIS 18894 (2nd Cir. 2009).  Please note that both United States v. Crispo and Conn. Bar

Ass'n v. United States concerned events that occurred since the enactment of the Bankruptcy

Code.  Accordingly, if the trustee in bankruptcy is an officer of the Court whereby a bankrupt

debtor was prosecuted for threatening the attorney for the trustee and/or members of her family

on federal obstruction of justice charges, there is no reason to declare that a standing Chapter 13

trustee appointed and supervised by the Office of the United States is not likewise an officer of

the federal court.  And I would daresay that if an officer of the Court misappropriated trust funds

from the court registry that said officer would be subject to an action to a FTCA action.  But

assuming arguendo that the Chapter 13 Trustee is not subject to the FTCA provisions, the UST

remains subject to FTCA actions.

        11.     The UST may also argue that Section 101(27) of the Bankruptcy Code provides

an exception from the term "governmental unit" for the United States trustee serving as a trustee

in a case under this title.  Herein, the UST was not serving in the capacity of the Chapter 13

trustee in the Soussis bankruptcy case.  Additionally, the FTCA action seeking the payment of

attorney's fees is not being prosecuted pursuant to the provisions to the Bankruptcy Code, but

rather, the inappropriate dissipation and  taking of the escrow moneys which would be an

unlawful conversion under the laws of the State of New York and a breach of a fiduciary duty to

safeguard trust funds as demonstrated in the motion papers.  And 28 U.S.C. §959(a) specifically

provides that a trustee "may be sued, without leave of the court appointing them, with respect to

any of their acts or transactions in carrying on business connected with such property."

Additionally, as recognized by the UST in Paragraph No. 21 of its Opposition, "any excess fees

must be remitted to the United States Trustee System Fund.  28 U.S.C. §§586(e)(1), (2),

589a(b)(8)."

        12.     And it may be further argued that the UST is not liable for discretionary acts

committed by a Chapter 7 trustee, <u>Sharifeh v. Fox,</u> 549 B.R. 495, 529 (Bkrtcy. N. D. Ill. 2016),

<u>In re Bernard L. Madoff Inv. Secs., LLC,</u> 2016 U.S. Dist. LEXIS 91675 (S.D.N.Y. 2016).

However, the dissipation of escrow funds is not a discretionary act, but rather the proper

maintenance and retention of all of the moneys in the Trustee's escrow account is a mandatory act.

13.     The UST and its officer are also required to properly supervise the administration of cases and trustees under chapter 13 of title 11.  Please see 28 U.S.C. §586(a)(3).  And as part of said duty, the UST is to: (a) prepare procedural guidelines adopted by the Executive Office of the United States Trustee, 28 U.S.C. §586(a)(3(A)(i); and (b) "deposit or invest under section 345 of title 11 money received as trustee in cases under title 11.  28 U.S.C. §586(a)(5).  And further as part of their responsibilities, the officers of the UST is to review the accuracy of the final report filed by the trustee.  Please see Eresian v. Koza (In re Koza), 375 B.R. 711, 717 (1st Cir. BAP 2007).  Please see Bankruptcy Rule 5009(a).  And it is indisputable that the officers of the UST are governmental officers.

14.     Accordingly, if there was a failure by the trustee to abide by the provisions set forth in the Bankruptcy Code due to errors in the handbook prepared by officials of the UST, the UST should bear said responsibility.  Herein, the inconsistency in the UST guidelines are apparent; the handbook as noted in In re Evans permitted Chapter 13 trustees to retain his or her percentage fee when a Chapter 13 case is dismissed or converted prior to plan confirmation based solely on its brief in Antonacci in 2011 and not based on an analysis by the Bankruptcy Court; thereafter, in 2015, as evidenced by the supplement to the handbook as demonstrated in Exhibit "C" to Soussis motion, the UST stated that:

> "If the plan is dismissed or converted prior to confirmation, the standing trustee must reverse payment of the percentage fee that had been collected upon receipt *if there is controlling law in the district controlling law in the district requiring such reversal* or if (after consultation with the United States Trustee) the standing trustee determines there are other grounds for concern."

The UST has still not proffered any authority or representation as to why the above-referenced supplement differs between districts when the Bankruptcy Code is a uniform law throughout the laws of the United States, which may differ solely due to the various property and exemption laws of the various states.

15.    Herein, the first deposit into the Trustee's escrow account was June 19, 2019 and on the same date, the Trustee disbursed moneys from said escrow account; on July 24, 2019, the Debtor paid $1,000,00 and the Trustee disbursed $15 out of the escrow account.  And the disbursement of $341,508.00 to Soussis did not take place until July 22, 2020.  Accordingly, the Trustee had possession of the escrow moneys for over a year and not once did the UST question the multiple disbursements from the escrow account or even advise this Honorable Court and the Debtor as to the questionable disbursements from the escrow account.  And was any of the Soussis percentage fees transferred to the UST System Fund?  Was the UST "asleep at the wheel?"

16.    And there was also a failure of the mandatory provision set forth in the Bankruptcy Code to promptly review said trustee's final report.  The UST was required to immediately bring errors in the final report to the attention of the trustee, the Bankruptcy Court and to the Debtor  In the current matter, the officers of the UST had failed to do so in a timely manner.

17.    Finally, in Paragraph Nos. 52 through 54 of the UST Opposition, the UST claimed that Soussis had not exhausted her administrative procedures.  However, as stated in Binder & Binder PC v. Barnhart, 481 F.3d 141, 2007 U.S, App. Div. LEXIS 7133 (2nd Cir. 2006) at 481 F.3d at 151, this Honorable Court has federal question jurisdiction under the provisions set forth in 28 U.S.C. §1331 because, if such jurisdiction were unavailable, Soussis would be

unable to obtain any judicial review of its claim for reimbursement of attorney's fees in accordance with the FTCA, especially as there is no administrative agency that has jurisdiction over this matter.  And it should be further noted that 28 U.S.C. §1334(a) grants the District Court jurisdiction to hear and determine cases all cases under title 11.  Please see also 28 U.S.C. §157(a).  And 28 U.S.C. §157(b)(1) provides:

> "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this title, and may enter appropriate orders and judgments, subject to review under section 158 of this title."

Accordingly, it is indisputable that this Honorable Court has the jurisdiction to hear and determine the FTCA claim, or at least, make appropriate findings for referral to the District Court.

WHEREFORE, for the reasons set forth in the Motion and above, Soussis respectfully requests this Honorable Court to issue an order requiring the disgorgement of the percentage fees retained by the Trustee, the award of attorney's fees pursuant to the FTCA in an amount that this Honorable Court believes is fair and reasonable, but up to a maximum of 25% of the amount ordered disgorged and for such other and further relief as is just and proper.

Dated:          Hauppauge, New York
                September 8, 2020

                          JEFFREY HERZBERG, P.C.
                          Attorney for Debtor Julia Soussis

                          By:   /s/ Jeffrey Herzberg
                                Jeffrey Herzberg
                          300 Rabro Drive, Suite 114
                          Hauppauge, New York 11788
                          (631) 761-6558
                          jeff@jherzberglaw.com