UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
In re:                                                                                    Case No. 8-19-73686-reg

Julia F. Soussis,                                                                   Chapter 13

                                        Debtor.

--------------------------------------------------------------------X


### MEMORANDUM DECISION DENYING DEBTOR'S MOTION SEEKING DISGORGEMENT OF THE CHAPTER 13 TRUSTEE'S FEES AND REIMBURSEMENT OF ATTORNEY'S FEES


      Before the Court is a motion ("Motion") by Julia F. Soussis (the "Debtor") seeking an order (1) directing Michael Macco, Esq., the standing Chapter 13 trustee (the "Trustee") to disgorge a portion or all of the statutory fees and expenses he collected in this Chapter 13 case and (2) directing the reimbursement of the Debtor's attorney's fees from the Trustee or the Office of the United States Trustee ("U.S. Trustee") pursuant to the Federal Torts Claims Act ("FTCA"). The Motion is opposed by the Trustee and the U.S. Trustee. The Court had previously granted the Debtor's motion seeking dismissal of her case prior to plan confirmation. The fundamental issue raised by the Debtor is one of first impression within this Circuit. The Court is asked to determine whether a Chapter 13 trustee must, as a matter of law, refund to a debtor any previously collected statutory fees and expenses upon dismissal of a case when the plan has not been confirmed. The relevant statutes that the Court must analyze to render a decision in this matter are 28 U.S.C. §586 and 11 U.S.C. §1326.

      The Debtor's first request is for entry of an order of the Court directing the Trustee to disgorge the fees he earned in this case. Disgorgement is an equitable remedy which requires the Court to exercise its powers under §105(a) of the Bankruptcy Code. While the Debtor fails to

cite to this provision or to provide the Court with any basis to employ §105(a), the Court is cognizant that these powers cannot be utilized to overcome statutory language which is contrary to the relief sought.  Because the Court has no authority either under statute or case law to fix the fees of the Trustee, which are mandated by statute, the Court cannot use its equitable powers to reduce these fees.  Likewise, a request for disgorgement of the entire fee cannot be granted using the Court's equitable powers because there has been no wrongdoing by the Trustee, nor has the Trustee run afoul of an order of this Court.  In fact, the Trustee's conduct appears to be consistent with the practice of Chapter 13 trustees in this district and complies with the regulations recommended by the U.S. Trustee.

Recognizing the procedural infirmities of this portion of the Motion, and because this is a case of first impression, the Court has reviewed the Debtor's arguments, affording her the greatest latitude in analyzing what relief is being sought.  It is clear as will be discussed herein that disgorgement of the Trustee's fee is not warranted.  Section 28 U.S.C. §586 clearly states that upon collection of each plan payment, the Trustee is entitled to take the portion of the payment corresponding to the Trustee's statutory fee.  Once the plan payment is so apportioned, the portion allotted to the Trustee's fee is severed from the portion allotted for distribution to creditors upon confirmation.  The percentage fee is the Trustee's to keep, regardless of whether the debtor's plan is confirmed.  The language of 11 U.S.C. § 1326 only supports this conclusion as it directs the Trustee to return to the Debtor only payments earmarked for creditors in the event the plan is not confirmed.

This interpretation is consistent with the changes made to the Chapter 13 Trustee program. Enacted in 1978 as a pilot program and implemented on a nationwide basis through the Bankruptcy Judges, U.S. Trustees, and Family Farmer Bankruptcy Act of 1986 ("1986

Amendments"), the U.S. Trustee Program ("Trustee Program") was designed as a self-funding system.  In essence, those who file for bankruptcy must pay a user fee to access the privileges and protections the Bankruptcy Code affords. Chapter 13 trustee fees are administrative in nature and support the efficacy of the Trustee Program.  To permit debtors to evade payment of these fees solely on the basis of the success of their plans would result in an outcome inconsistent with Congressional intent and would ultimately hinder the abilities of the Trustee Program to fund itself.  Thus, this Court finds the Trustee's fee is a user fee, directed by statute, that must be universally paid by all chapter 13 debtors regardless of the outcome of each case.

The Court finds the Debtor's second request for relief under the FTCA is misplaced.  The FTCA involves a waiver of sovereign immunity which is expressly limited to government employees.  As an administrator, the Trustee owes his duty to the Debtor's estate and not the government. Thus, the Court finds that the Trustee is not a government employee subject to the FTCA.  Moreover, even if the Trustee were to be construed as a government employee, the Court lacks subject matter jurisdiction over the Debtor's FTCA claim because the Debtor has failed to comply with the administrative requirements set forth in 28 U.S.C §2675 prior to bringing suit. As a result, the Debtor cannot yet sue the Trustee or the U.S. Trustee.

For these reasons and the reasons discussed below, the Court denies the Motion in its entirety.  Conflicts must not be created where the statutes as written by Congress are otherwise clear.  The relevant statutes discussed herein are straightforward in their meaning.  Accordingly, the Trustee is entitled to keep his statutorily prescribed fees under 28 U.S.C. §586 irrespective of confirmation in the Debtor's case and in all chapter 13 cases assigned to this Court going forward.

### *Procedural History and Facts*

The Debtor's residence ("Property") located in Garden City, New York is encumbered by a first mortgage lien currently held by Chase Mortgage Holdings, Inc. ("Bank").  In 2007 the Bank's predecessor in interest commenced a foreclosure action against the Property ("State Court Action").  The Debtor represents that the summons and complaint were not properly served. In the State Court Action, the Debtor failed to file an answer or otherwise respond to the complaint.  The state court entered a default judgment against the Debtor in favor of the Bank's predecessor in interest and ultimately a judgment of foreclosure and sale was entered.  The Debtor filed an appeal, which was dismissed by the Second Department.  *JPMorgan Chase Bank, N.A. v. Soussis*, 165 A.D.3d 1240 (App. Div. 2nd Dept. 2018).  The basis for the dismissal of the Debtor's appeal was that the Debtor had waived any claim that the lower court lacked personal jurisdiction over the Debtor.

On May 20, 2019 ("Petition Date"), the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.  On the Petition Date, Marianne DeRosa, Esq. was appointed the Chapter 13 trustee.  Due to prior filings, the Debtor's case was reassigned from the Hon. Louis A. Scarcella to the Hon. Robert E. Grossman, and on May 21, 2019, the Trustee became the Chapter 13 trustee for this case.  On June 18, 2019, the Debtor filed a proposed plan ("Plan") [ECF No. 8].  The Plan provided for 60 monthly payments of $1,000 plus a lump sum payment of $380,000 on September 20, 2019.  On August 7, 2019, the Debtor filed a motion to expunge claim No. 3 filed by PHH Mortgage Corporation as servicer for the Bank.  [ECF No. 19].  On September 25, 2019, the Debtor filed a First Amended Plan ("Amended Plan") [ECF No. 20] which amended the dollar amount of the monthly payments and provided for a lump sum

payment in the amount of $340,000 on or before November 29, 2019.  On October 7, 2019, the Debtor filed an amended motion to expunge claim No. 3 [ECF No. 24].  On June 29, 2020, the Debtor filed an application to dismiss the Debtor's case, and on June 30, 2020, an order was entered dismissing the Debtor's case [ECF No. 37].  While the reasons for seeking dismissal of the case are not germane to the outcome of this Memorandum Decision, it appears that the Debtor sought to dismiss her case because of a change made to the New York Real Property Actions and Proceedings Law, effective December 23, 2019, which permits a defendant to raise the defense of lack of standing after a judgment of foreclosure has been entered.[1]  Thereafter, the Trustee filed his accounting of receipts and disbursements in the Debtor's case ("Final Report"). The Final Report reflects that the Trustee received $362,100 from the Debtor, and that he returned to the Debtor $341,508**.**  Based on the information in the Final Report, the Trustee retained $20,592 for his statutory fees and expenses.  On August 11, 2020, the Debtor filed the Motion [ECF No. 41].  According to the Motion, the Debtor seeks entry of an order directing the Trustee to disgorge the fees he retained in the Debtor's case which were collected prior to any distributions made to creditors.  The Debtor also seeks to be reimbursed for attorney's fees she has incurred in this case from either the U.S. Trustee or the Trustee under the FTCA.  On September 2, 2020, the U.S. Trustee filed opposition to the Motion [ECF No. 43].  On September 3, the Trustee filed opposition to the Motion (ECF No. 45].  On September 8, the Debtor filed a Reply [ECF No. 46].  A hearing on the Motion was held on September 10, 2020. Thereafter, the matter was marked submitted.

---

[1] N.Y. Real Prop. Acts. Law § 1302-a (McKinney 2019).

*Discussion*

The Motion seeks two forms of relief.  First, the Debtor seeks entry of an order directing (i) the Trustee to disgorge an unspecified portion of his statutory fees or (ii) the Trustee to disgorge all of his statutory fees received in this case.  Second, the Debtor seeks reimbursement for attorney's fees she has incurred from either the Trustee or the U.S. Trustee under the FTCA. The Court shall consider the Debtor's request for disgorgement first.

### 1.  *Request for Disgorgement of Fees Paid to the Chapter 13 Trustee by the Debtor*

The Debtor seeks disgorgement of either a portion or the full amount of the statutory fee paid to the Trustee under the Debtor's plan.  The basis for seeking disgorgement are twofold:  1) that the fee is excessive, and 2) that the relevant statutes do not authorize the Trustee to receive payment of his statutory fee in unconfirmed cases.  The Debtor asks the Court to employ the remedy of disgorgement without providing the Court with the legal basis for granting this relief. The only reference in the Bankruptcy Code to disgorgement is found in §330(a)(5), which does not apply to the Trustee's fees as they are fixed by statute.[2]  While disgorgement is a remedy the Court may grant under certain circumstances, the Debtor must do more than simply refer to disgorgement as a possible remedy.  The Debtor's submissions lack any citations to support granting the equitable relief of disgorgement and do not cite to §105(a) at all.  The extent to which the Court may use its equitable powers under §105(a) to fashion relief must be explored before the merits of the Motion may be considered.

---

[2] § 330(a)(5) provides as follows:

The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

### a.  The Parameters of the Court's Equitable Powers Under Section 105(a)

The Bankruptcy Court has the statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).  This authority is not unfettered, however.  The Supreme Court has consistently held that "'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of'" the Bankruptcy Code.  *Law v. Siegel*, 571 U.S. 415, 421 (2014) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) (other citations omitted)). This general rule is consistent with the principle that an action undertaken under a general provision such as §105(a) must yield to a specific statutory provision that runs counter to such action.  *Law v. Siegel*, 571 U.S. at 421.  In this case, the Court cannot use §105(a) to grant the equitable relief of disgorgement where specific provisions of the Bankruptcy Code prohibit such relief.

### b.  Partial Disgorgement of the Trustee's Fee

The Court shall first address the Debtor's request that the Trustee disgorge a portion of his statutory fees he received in the Debtor's case on the grounds that the amount of the fee is "excessive" and/or "abhorrent."  The Debtor asserts she would not have objected to a "reasonable" fee based on the outcome of her case, and points to the standards for awarding fees set forth in 11 U.S.C. §326. Section 326(b) of the Bankruptcy Code states, in relevant part:

> In a case under subchapter V of chapter 11 or chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586(b) of title 28, but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1202(a) or 1302(a) of this title for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan.

11 U.S.C. §326(b).

Because the Trustee is a "standing trustee appointed under section 586(b) of title 28," this statute does not apply to the Trustee's fees.  The amount of fees the Trustee is paid is set by statute and simply is not subject to review by the Court.  As a result, there is no basis under §326(b) to grant the Debtor's request to reduce the statutory fees paid to the Trustee.  An understanding of the statutes governing the compensation of Chapter 13 trustees as well as the history behind the current method of compensation and oversight of Chapter 13 trustees supports this conclusion.

Upon enactment of the Bankruptcy Code in 1978, Congress created the U.S. Trustee Pilot Program ("Pilot Program").  H.R. REP. No. 95-595, at 1 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963.  The Pilot Program permitted the U.S. Trustee, upon approval by the Attorney General, to appoint private trustees in Chapter 13 cases in certain jurisdictions.  *See id* H.R. REP. No. 95-595, at 4.  The responsibilities of private, standing trustees include the oversight and administration of Chapter 13 cases.  *See* 28 U.S.C. §586(b) and 11 U.S.C. §1302.  The 1978 Bankruptcy Reform Act authorized standing trustees to collect their fees pursuant to 28 U.S.C. §586(e).  The purpose of this statutory construction was to render "the separation of administrative and judicial functions complete" resulting in a "fairer, more equitable and more effective system."  H.R. REP. No. 95-595, at 115.  The statute does not provide for judicial review of compensation, but rather places complete control of fixing the amount of compensation to be paid to Chapter 13 trustees in the hands of the Attorney General.  28 U.S.C. §586 mandates that the Attorney General must first approve the individual who acts as a standing trustee and must "fix" the maximum annual compensation of the trustee as well as the percentage

fee collected.[3]  *See generally* 28 U.S.C. § 586.  The Attorney General is responsible for supervising the administrative actions of standing trustees within chapter 13 cases. *See id.*  Thus, based on the plain reading of the statute and the legislative intent behind the Pilot Program, the Trustee's fees are solely subject to administrative adjustment by the Attorney General.  *See id.; See also In re Savage*, 67 B.R. 700, 706 (D.R.I. 1986).

In ruling on a similar issue, *In re Savage* reviewed the Bankruptcy Court's authority to fix the fees and expenses collected by a standing Chapter 13 trustee pursuant to the Pilot Program. *In re Savage*, 67 B.R. at 706.  The District Court ultimately concluded that the Bankruptcy Court did not have such authority to do so.  *See id.*  Rather, it noted that the statute mandated administrative action rather than case-by-case judicial review.  *Id.*  In reaching this conclusion the court noted the rationale for this change:

> Rather than enmire the courts in the laborious business of setting fees in individual cases—many of them small in terms of assets, and some of them bone-dry—the Code and Title 28 authorized the Attorney General to fix the allowances of standing trustees on a yearly basis. An overall sense of balance thus became achievable. The "no asset" or "meagre assets" cases can be handled professionally, because the system is not dependent upon each individual matter to generate its own fees. To the contrary, the Attorney General considers the volume of cases committed to the trustee, reviews the trustee's program-related expenses for the prior year, and projects the amount of funds that will be handled during the upcoming year. This overall forecast—rather than the vicissitudes of each individual filing—becomes the cynosure of the fee calculation. And, there is some built-in prophylaxis: lest the remuneration for standing trustees prove excessive, the statute sets a ceiling on both annual and per case compensation. *See* 28 U.S.C. §§ 586(e)(1)(A), (e)(2).

---

[3] 28 U.S.C. §586(b) provides for the appointment of a standing trustee by the U.S. Trustee subject to approval by the Attorney General. §586(c) provides more generally that "[e]ach United States trustee shall be under the general supervision of the Attorney General, who shall provide general coordination and assistance to the United States trustees." The Court discusses the Trustee's compensation guidelines under §586(e) *infra*.

*Id.*  The 1986 Amendments expanded the 1978 Pilot Program.  *See* Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99–554, 100 Stat 3088 (1986).  As a result of the success of the Pilot Program, the 1986 Amendments implemented the Pilot Program on a nationwide basis.  *See* H.R. REP. No. 99-764 at 19 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5227, 5231.  The Committee on the Judiciary specifically noted that "the [past] handling of both administrative and judicial functions by the bankruptcy courts has eroded public confidence in the bankruptcy system." *See* H.R. REP. No. 99-764 at 17. It further elaborated that the Trustee Program is "the soundest approach to the management of the bankruptcy system" because it alleviates concerns of inequity and lack of efficacy.  *See* H.R. REP. No. 99-764 at 18.  The current statutory structure of the fee formula in 28 U.S.C. §586(e) remains substantially similar to its original form and remains under the discretion of the Attorney General. *See* 28 U.S.C. 586(e).  The enactment of the Pilot Program in 1978 and its subsequent expansion through the 1986 Amendments has made clear that the fixing of the Chapter 13 trustee's fees is an administrative function over which the Court has no authority.

Congress designed the Trustee Program to be a self-funding system.  *See* H.R. REP. No. 99-764 at 22.  The source of the Trustee Program's funding derives from the users of the bankruptcy system themselves rather than taxpayers.  *Id.*  Concomitantly, the revenue raised is for the benefit of the Trustee Program, and not for the government.  *See id.*  The Committee on the Judiciary clarified that the Trustee Program provides an enormous benefit to the country's bankruptcy system and its continued success is imperative.  *See id.*  The enactment of the self-funding system was not of choice: by acknowledging the ongoing budget and deficit concerns, the Committee concluded that "self-funding becomes a necessity."  *Id.*  As it currently stands, the Trustee Program will cease to function as desired if individual filers do not pay fees for access to

the bankruptcy system.  Hence, those who file for bankruptcy must pay "user fees" in exchange for the privileges and protections the Bankruptcy Code affords.  *See also Nardello v. Balboa (In re Nardello)*, 514 B.R. 105 (D.N.J. 2014); *In re Turner*, 168 B.R. 882 (Bankr. W.D. Tex. 1994).

For these reasons, the Court has no authority to fix the dollar amount of the fee the Trustee receives in each Chapter 13 case.  It is a statutory fee not subject to modification based on a qualitative analysis of the work performed by the Trustee.  Therefore, the Debtor's request for partial disgorgement of the Trustee's fee is denied.

### c.  *Complete Disgorgement of the Trustee's Fee*

In addition to seeking entry of an order compelling the Trustee to disgorge all but a "reasonable" amount of the Trustee's fee, the Debtor also seeks entry of an order directing the Trustee to disgorge his entire fee in this case back to the Debtor.  As discussed above, the remedy of disgorgement is an equitable one, reliant on the application of §105(a).  Courts have used their powers under §105 to fashion disgorgement as a remedy under various circumstances. For example, disgorgement may be used to "wrest ill-gotten gains from a wrongdoer."  *In re JNL Funding Corp*., 620 B.R. 25, 29 (Bankr. E.D.N.Y. 2020) (citing *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993)).  Disgorgement of fees previously awarded may also be appropriate where a professional has violated disclosure requirements imposed by the Bankruptcy Code.  *In re GSC Group, Inc*., 502 B.R. 673, 750 (Bankr. S.D.N.Y. 2013).  However, the Bankruptcy Court is not free to use §105(a) to act as "a roving commission to do equity."  *In re Dairy Mart Convenience Stores, Inc*., 351 F.3d 86, 92 (2d Cir. 2003).

While the Debtor does not cite to §105(a), the Court would need to find a basis to rely on its equitable powers to consider the remedy of complete disgorgement.  The inherent problem with exercising its §105(a) powers is that there is no equitable basis to grant such relief.  The

Trustee is not charged with wrongdoing, nor can the Court find that the Trustee has violated an order of the Court. *In re JNL Funding Corp.*, 620 B.R. at 25. In the case herein, the Debtor has failed to proffer sufficient findings to support an order granting this extraordinary form of equitable relief. As such, the Debtor's request for the disgorgement of the Trustee's fees and expenses earned in this case cannot prevail.

Furthermore, the Handbook for Chapter 13 Standing Trustees provides that Chapter 13 trustees shall keep the percentage fee in cases dismissed prior to confirmation unless "there is controlling law in the district requiring such reversal" or if the Chapter 13 trustee determines that there are "other grounds for concern in the district." Trustee Handbook for Chapter 13 Standing Trustees, Effective October 1, 2012, ("Trustee Handbook").[4] These two exceptions are not applicable in this case as there is no controlling law in this district compelling the Trustee to return the fee he has earned in the Debtor's case, nor has the Trustee indicated that there are other grounds for concern in this case.

The Court is aware that in several of the decisions cited by the Debtor, debtors have brought motions successfully seeking entry of orders directing disgorgement of fees by Chapter 13 trustees under similar circumstances. For example, in *In re Dickens*, 513 B.R. 906 (Bankr. E.D. Ark. 2014) and *In re Acevedo*, 497 B.R. 112 (Bankr. D.N.M. 2013), the courts did not address the procedures chosen by the debtors, instead focusing on the merits of the motions. The one court to consider whether a motion for disgorgement was the correct vehicle held that the under Fed. R. Bankr. P. 5009(a), the proper procedure to seek review of the trustee's fee was to file an objection to the Final Report within 30 days of its filing. *In re Lundy*, No. 15-32271, 2017 WL 4404271 at *1 (Bankr. N.D. Ohio. Sept. 29, 2017). In *In re Lundy*, the court elected to

---

[4] Trustee Handbook available at: https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-13-handbooks-reference-materials.

treat the motion to disgorge as an objection to the trustee's final report, most likely because the debtor in *In re Lundy* was *pro se*.  In *In re Evans*, 615 B.R. 290 (Bankr. D. Idaho 2020) and *In re Nardello*, 514 B.R. 105, the respective debtors filed objections to the Chapter 13 trustee's final report.[5]

Unlike the debtor in *Lundy*, the Debtor is ably represented by counsel.  The decision of the Debtor to proceed by motion seeking disgorgement rather than by objecting to the Final Report is a decision chosen by the Debtor with the advice of counsel.  That is a right of all litigants under our system.  For the reasons set forth, the Court finds that the equitable relief of disgorgement is not a tool the Court may use to direct the Trustee to disgorge his entire fee in this case.

### d.  *Statutory Analysis of Relevant Code Provisions*

Having concluded that the form of relief articulated in the Motion is not available in the instant case, the Court does recognize that the Debtor has raised the issue as to whether the applicable statutes require the Trustee to return the statutory fees he collected in this case.  Therefore the Court will analyze this matter assuming the Debtor (i) filed an objection to the Final Report in compliance with Rule 5009, and (ii) the Court concluded that in the absence of controlling law in this District that it was appropriate to decide this issue as a matter of first impression.  Based on a straightforward statutory analysis, the Court would deny the Motion.  A plain reading of 28 U.S.C. §586 reveals that the Trustee collects his percentage fee regardless of

---

[5] In three decisions, the issue was raised pursuant to the Chapter 13 trustee's motion for allowance of a percentage fee under 28 U.S.C. § 586(e), which is not the procedure used in this District.  *See In re Crespin*, No. 17-11234-ta13, 2019 WL 2246540 (Bankr. D. N.M., May 23, 2019); *In re Rivera*, 268 B.R. 292 (Bankr. D. N.M. 2001); and *In re Miranda*, 285 B.R. 344, 2001 WL 1538003, at *2 (B.A.P 10th Cir. 2001) (unpublished table decision).

whether the plan is confirmed.  The rules for statutory interpretation dictate such result and are supported by the overall statutory scheme of Chapter 13.

### e.  *Rules of Construction*

The preeminent canon of statutory interpretation requires a court to "presume that a legislature says in a statute what it means and means in a statute what it says there."  *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992). (citations omitted).  If the text of a statute is unambiguous, the Court need not undertake further inquiry.

The Court interprets all federal statutes according to their plain meaning.  *Tyler v. Douglas*, 280 F.3d 116, 123 (2d Cir. 2001), *cert. denied*, 536 U.S. 906 (2002).  In determining its degree of ambiguity or clarity, courts are obliged not to examine statutory language in isolation. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997), *cited in Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005).  A court should consider the specific context in which that language appears and the statutory scheme's broader framework, striving to preserve the coherence and consistency of a statutory scheme.  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41 (1989) (citing *Northern Pipeline Constrc. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52–53 (1982)).  If plain, the language of a statute shall be dispositive and conclusive. *Carcieri v. Salazar*, 555 U.S. 379, 388 (2009).  "Ambiguity only exists so long as several plausible interpretations of the same statutory text, which are different in substance, can be advanced."  *Stern v. American Home Mortgage Servicing, Inc.* (*In re Asher*), 488 B.R. 58, 64 (Bankr. E.D.N.Y. 2013) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566– 67 (2005); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108-09 (2d Cir. 2012)). Only if the language of a statute is ambiguous should the Court take into consideration legislative history and the public policy underlying a statute.  *Greenery Rehabilitation Group,*

*Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir.1998).  Lastly, the Court should, wherever possible, construe statutes so that they fit into a harmonious whole.  *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 385, 389 (2000) (other citations omitted).

With these considerations in mind, the Court shall undertake an analysis of the relevant statutory language to determine whether the Bankruptcy Code permits the Trustee to retain his fee in this dismissed case where the plan was never confirmed.  28 U.S.C. § 586(e)(2) states as follows:

> (2) Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under subchapter V of chapter 11 or chapter 12 or 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall deposit in the United States Trustee System Fund—
>
> (A) any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans in cases under subchapter V of chapter 11 or chapter 12 or 13 of title 11 for which such individual serves as standing trustee; and
>
> (B) any amount by which the percentage for all such cases exceeds—
>> (i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of paragraph (1); plus
>>
>> (ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases. Subject to the approval of the Attorney General, any or all of the interest earned from the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section.

The relevant language governing the Trustee's payment of his fee provides that he is to "collect [his fee] from all payments received by [the Trustee] under plans in the cases . . . for which [the Trustee] serves as standing trustee."  28 U.S.C. 586§(e)(2).  Courts generally agree that the use of the term "plans" refers to all plans, regardless of whether they are confirmed by

the court.  *In re Acevedo*, 497 B.R. at 123; *In re Dickens*, 513 B.R. at 911; and *In re Nardello*, 514 B.R. at 113.  The Court agrees that the use of the term "plans" is not limited to confirmed plans.  Where courts diverge is whether the use of the term "collect" in this section is ambiguous. In other words, does "collect" mean "take" but not pay, does it mean a provisional payment of the Chapter 13 trustee's fee subject to return if the debtor's case is not confirmed, or does it encompass an irrevocable payment of the trustee's fee subject only to turn over to the U.S. Trustee System Fund in the event the Trustee reaches his statutory maximum under 28 U.S.C. § 586?  The Debtor urges the Court to find that the use of the word "collect" is not clear and its meaning can only be clarified by examining §1326.  The Trustee and the U.S. Trustee assert that the language of §586(e)(2) unambiguously states that once the Trustee collects his fee along with the plan payment, the fee is his to keep.

The Court does not find ambiguity in this subsection, and the meaning of the term "collect" is clear.  The trustee takes the monthly plan payments from each debtor, which must commence within thirty days of the petition date.  Each plan payment not only covers the proposed payment to creditors, but it includes the trustee's statutory fee, which is based on a percentage of the plan payment.  When that fee is collected, it is severed from the portion of the plan earmarked towards creditors.  That is what "collect" in this subsection means.  Far from being silent as to the status of the trustee's fee prior to confirmation, the use of the word "collect" denotes that the trustee may apportion the one payment made by the debtor under the plan between the trustee's fee and the payments to creditors.  Once the Trustee collects the fee, there is nothing in the Bankruptcy Code to indicate that these two categories of funds are re-combined thereafter.

This interpretation is consistent with the entire Chapter 13 statutory scheme.  A close reading of section 1326, which some courts turn to in order to clarify an alleged ambiguity found in the term "collect," does not mandate a different result.  In fact, this section is consistent with and supports the Court's interpretation.  Section 1326(a) provides, in relevant part:

> (1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—
>> (A) proposed by the plan to the trustee;
>> (B) scheduled in a lease of personal property directly to the lessor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment; and
>> (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.
>
> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).
>
> (3) Subject to section 363, the court may, upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a plan.

11 U.S.C. § 1326(a).  Subparagraph (2) directs the trustee to return to the debtor only payments not previously paid and not yet due and owing to "creditors."  As section 586 directs the Chapter

13 trustee to collect from each plan payment his or her statutory fee, the funds belong to the trustee as the fee is never owed to creditors, regardless of whether the plan is confirmed. This portion of the plan payment has already been carved out by virtue of §586(e), which is also consistent with the Debtor's promise under the proposed plan to pay the trustee's statutory fee as each plan payment is made. Therefore, the Debtor is only entitled to a return of the funds earmarked for creditors, with carve outs for allowed §503 administration claims and the Trustee's statutory fee.

The Court is aware that a number of cases in other districts have found ambiguity in the term "collect" as it is used in § 586(e)(2). The court in *Acevedo* listed three possible interpretations of this term, as follows:

> —Mandatory Construction: The language obligates the Chapter 13 trustee to collect trustee fees from all payments received under a plan even in cases where no plan is confirmed;
>
> —Collect and Hold Construction: The Chapter 13 trustee is to collect and hold the fees until confirmation, then to disburse them as directed by 11 U.S.C. § 1326(a)(2) and 28 U.S.C. § 586(e)(2).
>
> —Responsibility and Source Construction: The Chapter 13 trustee is responsible for collecting the percentage fees, and identifies the plan payments received by the Trustee as the sole source for collection, but is silent as to when the fees should be collected or paid to the Chapter 13 trustee or UST System Fund.

*Acevedo*, 497 B.R. at 122. Other courts have found ambiguity in this section as well, asserting that this section is silent as to whether the Chapter 13 trustee is permitted to keep the fees collected at the time of each plan payment irrespective of whether a debtor's case is confirmed. *In re Miranda*, 2001 WL 1538003, at *2; *In re Dickens*, 513 B.R. at 912; *In re Evans*, 615 B.R. at 297. Some courts look to §1326 in the first instance and find the answer in subsection (a)(2). *In re Lundy*, 2017 WL 4404271 at *6; and *In re Crespin*, 2019 WL 2246540 at *3 (the Chapter

13 trustee does not earn his or her fee until the commencement of payments to creditors). Hence, these courts find that payment of the trustee's fees and expenses only occurs upon confirmation of a debtor's plan. However, requiring the disbursement of a Chapter 13 trustee's fee to be contingent upon confirmation is the result of an "unnatural reading" of the statutes. *See Acevedo*, 497 B.R. at 124. This contingent interpretation fails to consider the trustee's fundamental role as an administrator and the duties he must perform once a Chapter 13 debtor files a petition for relief. Most significantly, this interpretation is based upon a finding of statutory conflict where none exists.

Not only is §586(e)(2) unambiguous in its directive that the Chapter 13 trustee collect and keep the fee upon receipt of plan payments by the debtor, this interpretation is in fact supported by the actual language of §1326(a). The decisions cited above find ambiguity where this Court sees none and turn to § 1326(a) and (b) to clarify this section. However, a close reading of § 1326(a) reveals that the Chapter 13 trustee is directed to return to the debtor only the funds earmarked for creditors in the event the case is not confirmed, and §1326(b) directs the trustee to be paid before or at the time of payment to creditors. See *In re Nardello*, 514 B.R. at 113-114 (finding because §1326(b) provides for the payment of trustee fees before or at the time the trustee pays creditors, and because the trustee's percentage fee is "separate and apart from payments to creditors," §1326(a) does not require that the fee be turned over to the debtor in unconfirmed cases). The Bankruptcy Court in *Nardello*, while in the minority, appears to have the better argument regarding the distinction made in §1326 between payments to creditors and the Chapter 13 trustee's percentage fee. The Court is mindful that it must refrain from creating conflict when statutory language is clear. To look beyond the statute in this instance would

contravene the intent of Congress and run afoul of the rules of statutory construction that this Court must apply.

### 2. Debtor's Request for Attorney's Fees Pursuant to the FTCA

The Debtor claims that under New York state law, the Trustee and/or the U.S. Trustee breached their fiduciary duties to the Debtor, who maintains a beneficial interest in the funds held by the Trustee until the plan is confirmed, when the Trustee took his commission from the funds held by the Trustee. Out of this alleged breach of fiduciary duty, the Debtor concludes that she has a claim against these parties and may recover attorney's fees as damages. 28 U.S.C. §1346(b) states as follows:

> (1) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

In general, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued," and is only subject to suit to the extent that it has waived sovereign immunity by enacting a statute consenting to suit. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* Any limitations imposed by the waiver statute, whether substantive, procedural, or temporal, are to be strictly construed against the claimant. *See, e.g.,*; *Bowen v. City of New York*, 476 U.S. 467, 479 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983).

First the Court will consider whether the Trustee is subject to suit under the FTCA. The language of this provision expressly limits its application to government employees only. Unfortunately for the Debtor, the Trustee is not a government employee. *See U.S. v. Crispo*, 306 F.3d 71, 78 (2d Cir. 2002). In *Cromelin v. United States*, 177 F.2d 275, 277 (5th Cir. 1949), albeit a decision arising before the enactment of the Bankruptcy Reform Act of 1978, the Court of Appeals for the Fifth Circuit concluded that a bankruptcy trustee is not a federal employee for purposes of the FTCA. "The trustee, like a receiver, is an officer of court, appointed by the court, directed by the court, and paid by the court from the funds of the court. He is in no sense an agent or employee or officer of the United States." *Id.* at 277.

In cases arising outside of the FTCA, courts have also held that bankruptcy trustees such as the Trustee are not employees of the federal government. The liability of a private trustee under the Equal Access to Justice Act ("EAJA") was assessed in *Brandon v. Sherwood (In re Sann)*, 546 B.R. 850, 855 (Bankr. D. Mont. 2016). Like the FTCA, imposing liability under the EAJA requires a waiver of sovereign immunity. *Id.* The court was called on to determine whether a private trustee could be held liable under the EAJA which permits suit against the United States or any agency or official of the United States acting in his or her official capacity. In reaching its conclusion that the private trustee was not liable under the EAJA, the court in *Sherwood* found that the private trustee was not an employee or an agent of the United States. *See id.* The court cited to the Supreme Court case of *Cal. State Bd. of Equalization v. Sierra Summit, Inc.*, which stated that the bankruptcy trustee is distinct from the Federal Government. *See Cal. State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 849-850 (1989).

According to the court in *Sherwood*, the bankruptcy trustee's duty is to represent the estate rather than serve as an agent to the government. *Id.* Thus, a clear distinction can be drawn

between the federal government and standing trustees in bankruptcy cases. The waiver of sovereign immunity language in the FTCA is even more restrictive than the waiver language in the EAJA in that the waiver only applies to "employees" of the federal government. The FTCA concerns a waiver of sovereign immunity which must be strictly construed. Trustees owe their duties to the estate and not the government. Thus, they are not "employees of the government" within the meaning of the FTCA.

Furthermore, even if the Trustee was considered an "employee" of the government so as to fit within the narrow description of parties subject to suit, this Court lacks subject matter jurisdiction over the Debtor's FTCA claim. Because the Debtor has failed to exhaust her administrative remedies prior to bringing an action under the FTCA, the Debtor has no right to seek reimbursement of her counsel fees from any party, including the U.S. Trustee. The FTCA serves as a limited waiver of sovereign immunity but requires consent to be sued by the defendant. The United States cannot consent to suit unless the administrative requirements set forth in 28 U.S.C. §2675 have been met. Under §2675, the Debtor must file an administrative complaint with the appropriate federal agency within two years after the claim has accrued and specify the amount of the claim in writing so as to put them on notice. *See DeBoe v. Du Bois*, 503 F. App'x 85, 89 (2d Cir. 2012); *See also Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 720 (2d. Cir. 1998) ("In sum, the United States has not consented to be sued on a tort claim unless the claim was first presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing."). The Debtor herein has made no attempt to comply with 28 U.S.C. §2675, and therefore the United States has not consented to suit. Thus, this Court does not have subject

matter jurisdiction over the Debtor's FTCA claim.  For these reasons, the portion of the Motion

seeking to recovery attorney's fees from the Trustee and/or the U.S. Trustee is denied.

### *Conclusion*

For the reasons set forth in this Memorandum Decision, the Motion is denied in its

entirety.  The Court shall enter an order consistent with this Memorandum Decision forthwith.



**Dated: Central Islip, New York**
**November 12, 2020**

**Robert E. Grossman**
**United States Bankruptcy Judge**